**Virgil Dale AGEE, Appellant,**

v.

**Kenneth HICKMAN et al.,**
Appellees.

No. 73–1496.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 14, 1974.

Decided Jan. 31, 1974.

Arthur A. Benson, II, Kansas City, Mo., for appellant.

William A. Moon, Springfield, Mo., for appellees.

Before VAN OOSTERHOUT, Senior Circuit Judge and LAY and STEPHENSON, Circuit Judges.

PER CURIAM.

This is an action brought by plaintiff Agee against Hickman and Smart, Deputy Sheriffs of Greene County, Missouri, individually and in their official capacities, for damages caused by excessive force alleged to have been used in arresting plaintiff and taking him into custody.[1]

Jurisdiction is based on 28 U.S.C. § 1343. Plaintiff's action is brought for violation of his constitutional rights pursuant to 42 U.S.C. § 1983.

The case was tried to the court (Judge Collinson) without a jury, no request for a jury trial having been made. Judge Collinson dismissed the complaint on the basis of his finding of fact that the force used by the officer-defendants was reasonable and necessary to effect his arrest. This timely appeal is based upon plaintiff's contention that such finding is clearly erroneous. We disagree and affirm for the reasons hereinafter set out.

We shall briefly summarize the pertinent evidence. Plaintiff and his companion Watts, both of whom had substantial criminal records, on October 1, 1970, had been driving around in plaintiff's car and admitted that they had consumed a considerable amount of whiskey and beer. Deputy Sheriffs Hickman and Smart, while on routine duty, observed plaintiff's car with his name printed thereon parked on a road about four miles from Springfield, Missouri. The officers stopped to investigate. They heard a woman scream and shortly after saw a twelve-year-old girl running out of the woods toward the road with the plaintiff in pursuit. Hickman went to the girl, whom he recognized as a neighbor. Her clothing was torn and she was sobbing and hysterical. The girl said she had been raped and her clothing, appearance and mental distress corroborated her story.

Officer Smart stopped the plaintiff, arrested him, and handcuffed him with

1. Mickey Owen, Sheriff of Greene County, was made a party to the action. Plaintiff voluntarily dismissed as to Owen.

his hands placed behind his back, and brought him to the patrol car. Shortly thereafter Hickman arrived in the patrol car with the victim. He directed Smart to remove the handcuffs and this was done. Hickman took hold of plaintiff by the shoulder and asked him if he had raped the little girl. Plaintiff backed away, squared off and clenched his fists, and declared that he was in pretty good shape. Hickman admits that at this point he punched the plaintiff in the stomach with his fist and slapped him a couple of times on the face. Plaintiff claims he was hit more often. Each deputy then took the plaintiff by a hand and had him lean over the car hood to put on the handcuffs. Plaintiff raised up suddenly before the cuffs were replaced and he was pushed down to a bending position, his face striking the hood of the car. The handcuffs were then placed on the plaintiff with his hands behind his back and he was taken to headquarters and booked.

There is a conflict in the evidence as to the extent of plaintiff's injuries. Plaintiff testified as a witness and was unable to say how often he was beaten. In answer to the question, "As best you recall, how many times were you struck?", he replied, "It would be hard for me to say, several times." With respect to the removal of the handcuffs his testimony is, "I don't recall the handcuffs ever being removed."

Plaintiff further testified that he made no complaints to the sheriff, the jailer or anyone else about being beaten. He made no complaint about abusive treatment until approximately one year after the incident, as evidenced by the following testimony. When asked, "Was it when you filed your 2726 about a year later?", he answered, "Possibly, yes, sir, I believe so." It is undisputed that the plaintiff suffered no permanent injury and that no medical attention was requested by plaintiff or required.

Prior to the commencement of this suit, plaintiff was convicted of rape of the little girl and was serving a ninety-nine-year prison sentence. No challenge has been made to the validity of plaintiff's arrest. Plaintiff's sole contention is that the officers used more force than necessary to accomplish his arrest and that the blows inflicted upon him were for the purpose of punishing him and were not necessary to effect the arrest or keep him in custody.

We are somewhat troubled by the release of plaintiff from his handcuffs at the direction of Hickman. Hickman was produced as an adverse witness by the plaintiff. On examination by defendants' counsel, the following evidence was received.

Q Lt. Hickman, why did you ask that handcuffs be removed from Virgil Agee at the time you asked it to be done, that evening?

\* \* \* \* \* \*

A We were driving a dog car. The back seat is removed from a dog car so a dog can be hauled back there. At the time we had no dogs in the car.

\* \* \* \* \* \*

A And a person has to sit flat in the car, not in a seat, and it's kind of hard to sit behind in a dog car with your hands behind you. I checked to see if Mr. Agee had his cuffs put on too tight, I was going to put them in front of him, where it would be easier for him to ride in the back end of the car.

Q Was that the sole purpose why you had the cuffs removed, then, from behind Mr. Agee at that time:

A At the time I had them removed, that was the only thing that was in my mind at the time.

\* \* \* \* \* \*

Q And what happened immediately after the cuffs were removed from behind Virgil Dale Agee by Mr. Smart?

A He made the statement to me, he said, "You are making a big mis-

take because I'm in pretty good shape."

Q What did he do?

A He kind of squared off at me like he was ready to fight. This is the impression I got from Mr. Agee.

Q Now, after you hit him in the stomach, was there still a tussel with him to get the cuffs back on him, then?

A After I hit him in the stomach and Officer Smart took his arm and put him on the hood of the patrol car and was going to cuff him. He resisted being cuffed again and became belligerent.

Q And were the cuffs put back on him, then?

A Yes, sir, in back of him, sir.

Judge Collinson in his well-reasoned opinion, not reported, states:

The testimony of the officers was most candid. They both frankly admitted that they were outraged at what they had seen and were angry. They did not contend that the plaintiff struck or kicked either of them. The only resistance offered by the plaintiff was by doubling his fists and "squaring off," and by abruptly straightening up when they had bent him over the car hood to put cuffs on him.

On the other hand, when a man under arrest doubles his fists and "squares away," there is no legal or practical reason that the officer has to give him the first "lick" before using reasonable force to overcome the show of force. A quick punch in the stomach and a few slaps across the face may save the officer from getting skinned up in a fist fight.

■ The trial court saw and heard the witnesses and thus is in a far better position to make credibility findings than is this court upon the basis of the cold record. The right and responsibility for making credibility findings rest with the trial court.

The officers were not asked why plaintiff was re-handcuffed with his hands behind his back. The trial judge could reasonably infer that the circumstances of Agee's belligerent condition after he had been released from the handcuffs justified replacing them behind his back. It is also obvious that it is easier to place handcuffs behind the back of a belligerent person than in front of his body and that so placing the handcuffs places greater restraint upon the person handcuffed. In any event, no violation of plaintiff's constitutional rights arises out of placing handcuffs behind the back.

■ We have carefully examined the entire record and are satisfied that plaintiff has failed to demonstrate that Judge Collinson's determination that the force used was reasonable and necessary under the circumstances to effect plaintiff's arrest and to keep him in custody was clearly erroneous. We limit our holding to the facts of this case as disclosed by the record. As Judge Collinson aptly states:

This Court does not mean to condone, by this opinion, the use of any force by officers simply because a suspect is argumentative, contentious or vituperative. It is the policeman's lot to take such verbal abuse without retaliation by force. Force can only be used to overcome physical resistance or threatened force, as in this case.

The judgment of dismissal is affirmed.