# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3889

_____

Timothy Clair Shannon,                    *
                                          *
            Appellee,                      *
                                          *       Appeal from the United States
      v.                                   *       District Court for the
                                          *       Northern District of Iowa.
Officer Michael Koehler; City of          *
Sioux City; Joseph C. Frisbie,            *
                                          *
            Appellants.                    *

_____

Submitted: June 16, 2010
Filed: August 17, 2010

_____

Before LOKEN, ARNOLD and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

The plaintiff, Timothy Shannon, is a former Marine and retired police officer who owns a pub in Sioux City, Iowa, called "Tom Foolery's." In the early morning hours of September 13, 2006, Shannon was arrested inside Tom Foolery's by Michael Koehler, a patrol officer with the Sioux City Police Department. Following his arrest, Shannon filed this action under 42 U.S.C. § 1983 against Officer Koehler, the City of Sioux City, the Sioux City Police Department, and Sioux City's former Chief of Police, Joseph Frisbie. Shannon's complaint alleges that Officer Koehler violated the

Fourth Amendment by using excessive force in arresting him, and that the City, the Department, and Chief Frisbie are liable under § 1983 for establishing or tolerating certain policies or customs that led to the purported violation of his constitutional rights. The complaint also includes state-law tort claims against each of the defendants.

The district court[1] dismissed the claims against the Department, holding that the Department is merely a subdivision of the City and thus not subject to suit. Thereafter, a magistrate judge granted the City and Chief Frisbie's motion to "bifurcate" the claims against Officer Koehler from the claims against them. The district court later denied the defendants' motion for summary judgment on all of Shannon's claims and reversed the magistrate judge's order bifurcating the relevant claims.

The defendants appeal the district court's denial of summary judgment on Shannon's federal claims as well as the district court's decision on the bifurcation issue. For the following reasons, we affirm the district court's denial of qualified immunity to Officer Koehler and dismiss the rest of the appeal for lack of jurisdiction.

I.    BACKGROUND

On the evening of September 12, 2006, Shannon was in Tom Foolery's drinking. Starting around closing, at about 1:00 a.m. on September 13, surveillance cameras recorded Shannon stumbling drunkenly through the pub's seating area and interacting with departing patrons.

---

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

At about 1:15 a.m., Christina Navrkal and Jill Murad arrived at Tom Foolery's, apparently intending to drive Shannon home. The surveillance videos show Shannon, Navrkal, and Murad begin arguing almost immediately. The three walk behind the bar, yelling back and forth, and Shannon punches Navrkal in the face. Murad then shoves Shannon with both hands, sending him reeling backward and onto the floor. Shannon stays down until the bartender comes over to help him to his feet. Shannon touches his scalp and discovers that he is bleeding. The argument continues. Eventually, Murad becomes concerned about the cut on Shannon's head and calls 911.

What happened next is the subject of some dispute. The district court described the relevant events as follows:

> Police officer Michael Koehler, a defendant in this case, responds to a call for a disturbance between two females, at a bar, involving an injured person. Once Koehler arrives on the scene, he is greeted at the front door by a woman, Jill Murad, who allegedly states that one of the females inside had been "touched or grabbed by the male who was in the bar." Koehler and Murad walk to the middle of the establishment. The plaintiff, Timothy Shannon, is behind the bar. Shannon walks out from behind the bar, toward Koehler, and strongly states to Koehler, using profanity, that he owns the bar, does not need Koehler, and orders him to get out of the bar. Shannon eventually comes within arm[']s length of Koehler. Koehler alleges that Shannon pokes him, once, in the chest. Shannon denies this. Koehler uses both his hands to holster his flashlight on a ring in the back of his belt. As he is doing this, Shannon allegedly pokes Koehler a second time, which Shannon denies, and Koehler performs a takedown, which causes Shannon to hit a bar stool and land on the hardwood floor. Once Shannon is on the ground, Koehler places a handcuff on one of Shannon's arms and, after using additional force, secures a second arm in the other handcuff. Koehler claims that the additional force was necessary because Shannon had tucked his arm under his body. Shannon denies being uncooperative and alleges that he was injured during his arrest.

-3-

673 F. Supp. 2d 758, 761-62 (N.D. Iowa 2009).

In August 2008, Shannon filed suit in federal court. Count 1 of Shannon's complaint contains two categories of claims arising under 42 U.S.C. § 1983. The first claim in Count 1 alleges that Officer Koehler violated the Fourth Amendment by using excessive force in arresting him. The other claims in Count 1 allege that the City, the Department, and Chief Frisbie established or tolerated certain policies or customs that led to Officer Koehler's use of excessive force. Count 2 of Shannon's complaint contains assault and battery claims arising under state law against each of the defendants.

As we mentioned above, Shannon's claims against the Department were promptly dismissed. The City and Chief Frisbie then moved to "bifurcate" the claims against Officer Koehler from the claims against them. The magistrate judge granted the request, ordering separate trials under Rule 42(b) of the Federal Rules of Civil Procedure.

Next, the remaining defendants filed a joint motion for summary judgment, asserting two principal grounds. First, Officer Koehler argued that he was entitled to qualified immunity, either because his use of force was objectively reasonable (and therefore not excessive under the Fourth Amendment) or, alternatively, because the unlawfulness of his conduct was not clearly established. Second, the City and Chief Frisbie argued that they were entitled to summary judgment, either because Shannon could not meet his burden of proving that Officer Koehler used excessive force or, alternatively, because Shannon could not meet his burden of proving that Frisbie or some other policymaker "condoned" a policy or custom that led to the alleged violation of his constitutional rights.

The district court denied summary judgment on all of Shannon's claims in a lengthy opinion and order. For now, two parts of the district court's analysis are

worth introducing in detail, both of which relate to Officer Koehler's qualified immunity defense.

First, in the section of its opinion addressing the circumstances of Shannon's arrest, the district court found that several "genuine issues of material fact exist concerning whether Koehler's use of force was objectively reasonable." 673 F. Supp. 2d at 783-84. With respect to the initial confrontation, which culminated in Officer Koehler using a so-called "leg sweep" to take Shannon to the ground, the court identified genuine issues of fact "concerning whether Shannon made contact with Koehler prior to the takedown, whether the takedown was appropriate and administered in accordance with police procedures, and the extent of Shannon's injuries resulting from the takedown." *Id.* at 784. With respect to the ensuing struggle on the ground, the court identified genuine issues of fact "concerning when any alleged resistance by Shannon ceased and what force was used after resistance ceased, whether Shannon was fully subdued at any point before the force ended, and whether police procedures would have instructed Koehler to wait for backup, which was arriving, to . . . secure Shannon's other arm [after handcuffs were placed on one of Shannon's wrists]." *Id.*

Second, in the section of its opinion addressing the alleged violation of clearly established law, the district court held that "view[ing] the record in the light most favorable to Shannon, . . . Koehler was on notice that his actions . . . were unlawful." *Id.* at 786 (internal citation omitted). The district court's explanation for that holding focused on these lines from our decision in *Brown v. City of Golden Valley*, 574 F.3d 491 (8th Cir. 2009):

> The right to be free from excessive force in the context of an arrest is clearly established under the Fourth Amendment's prohibition against unreasonable searches and seizures. Moreover, it is clearly established that force is least justified against nonviolent misdemeanants who do not

-5-

flee or actively resist arrest and pose little or no threat to the security of the officers or the public.

673 F. Supp. 2d at 785 (internal citations omitted) (quoting *Brown*, 574 F.3d at 499). The district court went on to find that "Shannon has properly supported, for [the purpose of opposing] . . . summary judgment, his allegations that he was simply a nonviolent misdemeanant, at most"; that he "did not flee or actively resist arrest"; and that he "posed little or no threat to Koehler's security or that of Navrkal and Murad." *Id.* Based on these considerations, the district court rejected Officer Koehler's contention that "[his] actions were within the 'hazy border between excessive and acceptable force.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. ---, 129 S. Ct. 808 (2009)).

As to the rest of the claims, it suffices to note the result. Specifically, the district court denied summary judgment on Shannon's § 1983 claims against the City and Chief Frisbie—what the parties call the "*Monell* claims," *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978) ("[L]ocal governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' . . . .")—concluding that "Shannon has generated a genuine issue of material fact concerning whether Koehler's alleged use of excessive force was committed pursuant to a municipal custom," 673 F. Supp. 2d at 803. Likewise, the court denied summary judgment on Shannon's state assault and battery claims, concluding that "there are genuine issues of material fact" about whether Officer Koehler exceeded the bounds of his lawful authority in arresting Shannon. *Id.* at 804-05 (discussing Iowa Code § 804.8 and the interaction between Iowa Code § 670.2 and Iowa Code § 670.4).

In addition to ruling on the motion for summary judgment, the district court also reviewed, sua sponte, the magistrate judge's order granting separate trials on the claims against Officer Koehler and the claims against the City and Chief Frisbie.

Noting that separate trials "would be a waste of . . . judicial resources," the court held that the magistrate judge's "finding that the claims should be bifurcated was clearly erroneous." *Id.* at 770.

The defendants filed a notice of appeal setting out three issues: "(1) qualified immunity and whether the law was clearly established; (2) *Monell* liability; and (3) reversal of the Order bifurcating the . . . claims [against the City and Chief Frisbie] from the . . . claims against Officer [Koehler]." Shannon moved to dismiss the appeal to the extent the defendants sought review of issue (3). Initially, Shannon did not dispute that this court has jurisdiction under the collateral order doctrine to review issue (1). *See Johnson v. Jones*, 515 U.S. 304, 311-12 (1995). And Shannon conceded that this court has pendent appellate jurisdiction to consider issue (2) because it is, in his words, "arguably inextricably intertwined" with issue (1). *See Kincade v. City of Blue Springs*, 64 F.3d 389, 394 (8th Cir. 1995). The defendants opposed Shannon's motion to dismiss, arguing that the district court's decision on the bifurcation issue is "inextricably intertwined with the issues of qualified immunity and *Monell* liability."

The discussion of jurisdiction in the parties' merits briefs leaves much to be desired. In their opening brief, the defendants assert that they "have the right to appeal the denial of qualified immunity in a § 1983 action," and that this court has pendent appellate jurisdiction "to consider the *Monell* claims . . . as well as the bifurcation issue." In his brief, Shannon renews his previous argument for dismissing the appeal from the district court's decision on the bifurcation issue and now also argues that this court lacks jurisdiction to review the other two issues pressed by the defendants.

-7-

## II.    DISCUSSION

We begin by addressing the qualified immunity issue, since that is the hook on which the defendants hang their assertion of pendent appellate jurisdiction to consider the other two issues raised in this appeal. "Ordinarily, we lack jurisdiction 'to hear an immediate appeal from a district court's order denying summary judgment, because such an order is not a final decision.'" *Langford v. Norris*, --- F.3d ---, 2010 WL 2813551, at *5 (8th Cir. July 20, 2010) (quoting *Krout v. Goemmer*, 583 F.3d 557, 563-64 (8th Cir. 2009)); *see also* 28 U.S.C. § 1291. "We do, however, have 'limited authority . . . to review the denial of qualified immunity through an interlocutory appeal under the collateral order doctrine.'" *Langford*, 2010 WL 2813551, at *5 (alteration in original) (quoting *Krout*, 583 F.3d at 564). Jurisdiction over an interlocutory appeal from the denial of qualified immunity "extends only to 'abstract issues of law,' not to 'determination[s] that the evidence is sufficient to permit a particular finding of fact after trial.'" *Krout*, 583 F.3d at 564 (alteration in original) (internal citation omitted) (quoting *Johnson v. Jones*, 515 U.S. 304, 314, 317 (1995)). Appellate review in these circumstances is therefore limited to "determin[ing] whether all of the conduct that the district court 'deemed sufficiently supported for purposes of summary judgment' violated the plaintiff's clearly established federal rights." *Lockridge v. Bd. of Trs. of Univ. of Ark.*, 315 F.3d 1005, 1008 (8th Cir. 2003) (en banc) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996)).

Shannon halfheartedly argues that we lack jurisdiction to review the district court's denial of qualified immunity to Officer Koehler because "[t]he district court found disputed facts at nearly every stage of the case." But that argument appears to stem from a misreading of the Supreme Court's decision in *Johnson v. Jones*. *See Behrens*, 516 U.S. at 312-13 ("Denial of summary judgment often includes a determination that there are controverted issues of material fact, and *Johnson* surely does not mean that *every* such denial of summary judgment is nonappealable." (internal citation omitted)). As the Supreme Court has explained,

-8-

*Johnson* held, simply, that determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case; if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred, the question decided is not truly "separable" from the plaintiff's claim, and hence there is no "final decision" under [*Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949)] and [*Mitchell v. Forsyth*, 472 U.S. 511 (1985)]. *See* 515 U.S. at 313-18. *Johnson* reaffirmed that summary judgment determinations *are* appealable when they resolve a dispute concerning an "abstract issu[e] of law" relating to qualified immunity, *id.* at 317—typically, the issue whether the federal right allegedly infringed was "clearly established."

*Behrens*, 516 U.S. at 313 (alteration to internal quotation in original) (some citations omitted). Here, there is no serious question that we have jurisdiction to decide whether, accepting Shannon's version of the facts, Officer Koehler is entitled to qualified immunity as a matter of law. *See Kahle v. Leonard*, 477 F.3d 544, 549-50 (8th Cir. 2007).[2]

"We review a district court's qualified immunity determination on summary judgment *de novo*, viewing the record in the light most favorable to [the plaintiff] and drawing all reasonable inferences in [his] favor." *Langford*, 2010 WL 2813551, at *9 (quoting *Krout*, 583 F.3d at 564). In this instance, the district court chose to follow

---

[2]Shannon also complains that Officer Koehler is not "[p]laying fair" because Koehler's challenge to the denial of qualified immunity is premised on "his own version of the facts" rather than Shannon's version. While Officer Koehler's briefing does occasionally go too far in shading the facts in his favor, *see, e.g.*, Appellants' Br. at 12-16, 22-23, we do not think those stray examples of overzealous advocacy warrant dismissal of the qualified immunity appeal. *Cf. Felder v. King*, 599 F.3d 846, 849 (8th Cir. 2010) (dismissing for lack of jurisdiction because the officers seeking qualified immunity "fail[ed] to raise any purely legal question for review" (emphasis omitted)).

the traditional sequence for resolving a qualified immunity claim, asking first "whether the facts alleged or shown, construed in the light most favorable to [Shannon], establish a violation of a constitutional . . . right," and second, "whether that constitutional right was clearly established as of [September 13, 2006], such that a reasonable official would have known that his actions were unlawful." 673 F. Supp. 2d at 773 (quoting *Krout*, 583 F.3d at 564); *see also Pearson v. Callahan*, 555 U.S. ---, 129 S. Ct. 808, 818 (2009) (holding that while the "two-step protocol" set out in *Saucier v. Katz*, 533 U.S. 194 (2001), "is often appropriate, it should no longer be regarded as mandatory"). We see no good reason to depart from that sequence on appeal.

Shannon's theory of the constitutional violation is run-of-the-mill: He claims that Officer Koehler violated the Fourth Amendment by using excessive force in arresting him. The dispositive question is whether the amount of force the officer used was objectively reasonable. *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989). In turn, "[t]he reasonableness of a particular use of force depends on the circumstances of each case, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Wertish v. Krueger*, 433 F.3d 1062, 1066 (8th Cir. 2006) (quoting *Graham*, 490 U.S. at 396).

As we recounted above, the district court found adequate support in the record for Shannon's allegations that he was not suspected of committing a serious crime, that he did not attempt to flee or actively resist arrest, and that he posed little or no threat to Officer Koehler or others.[3] The court also found that there were genuine

---

[3]Regarding the severity of the crime at issue, it is not clear from the record whether Shannon could reasonably have been suspected of committing *any* crime. As the district court noted, "[t]he defendants claim that Murad informed Koehler, upon his arrival at the bar, that a female had been touched or grabbed by the male in the bar." 673 F. Supp. 2d at 779 n.12. At Officer Koehler's deposition, however, he

-10-

disputes about whether Shannon poked Officer Koehler in the chest and about the severity of the injuries that Shannon suffered as a result of Koehler's use of force in arresting him. The defendants have a somewhat different account of what happened in Tom Foolery's, but nothing in the record—including the surveillance videos—clearly contradicts Shannon's version of the facts. *Cf. Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Assuming, then, that Shannon's story is true—*i.e.*, assuming he was not threatening anyone, not resisting arrest, and so on—it was not reasonable for Officer Koehler to use more than de minimis force against him. *See, e.g.*, *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009); *Bauer v. Norris*, 713 F.2d 408, 412 (8th Cir. 1983); *Feemster v. Dehntjer*, 661 F.2d 87, 89 (8th Cir. 1981); *Agee v. Hickman*, 490 F.2d 210, 212 (8th Cir. 1974) (per curiam). It follows, *a fortiori*, that using enough force to cause the injuries that Shannon alleges—a partially collapsed lung, multiple fractured ribs, a laceration to the head, and various contusions—was also unreasonable. *See Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003) ("In addition to the circumstances surrounding the use of force, we may also consider the result of the force."); *see also Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) ("[E]ven where some force is justified, the amount actually

---

stated that Murad told him "to check [Shannon's] head." *Id.* When asked whether Murad said anything else, Officer Koehler said, "Not that I recall, no." *Id.* Aside from this discrepancy in Officer Koehler's position, it must be noted that the emergency call to which Koehler responded referred to "a disturbance *between two females*." *Id.* at 778 (emphasis added). And we agree with the district court's assessment that when Officer Koehler entered Tom Foolery's, "there were no indications that [the] disturbance was serious and nothing occurred that would have drastically altered the severity of the potential crime[] at issue." *Id.* at 779.

used may be excessive." (quoting *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002))).

This is not to say that police officers are categorically prohibited from using more than de minimis force to subdue suspects who are drunk and belligerent. *Cf. Marvin v. City of Taylor*, 509 F.3d 234, 246-48 (6th Cir. 2007) (stating that the arrestee's "heavy intoxication created a volatile situation," and remarking that volatility supported the conclusion that the arresting officers' use of force was objectively reasonable); *Wilson v. Flynn*, 429 F.3d 465, 468-69 (4th Cir. 2005) (finding that the suspect's drunkenness, among other factors, supported the conclusion that the arresting officers' use of force was objectively reasonable). And there can be no doubt that officers are permitted to use force when their safety is threatened. *See, e.g.*, *Brown*, 574 F.3d at 497 ("A threat to an officer's safety can justify the use of force in cases involving relatively minor crimes and suspects who are not actively resisting arrest or attempting to flee."). But considering the facts and circumstances of this particular case, *see Graham*, 490 U.S. at 396, we cannot say that a reasonable officer on the scene would have felt the need to use any force against Shannon, much less enough force to cause the injuries of which he complains. The cases on which Officer Koehler relies do not compel a contrary conclusion, for each of the relevant cases involved a threat to officer safety that was more obvious, more serious, or both more obvious and more serious than the potential threat Officer Koehler faced in Tom Foolery's. *See, e.g.*, *Wertish*, 433 F.3d at 1067 ("Officer safety concerns made it objectively reasonable for . . . officers to assume they were dealing with a belligerent drunk—or perhaps a fleeing criminal—who required forcible detention."); *Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1105 (8th Cir. 2004) ("[I]t was objectively reasonable for [the arresting officer] to believe that he was in immediate danger, as he faced the possibility that he could be dragged down the road with his arm trapped in the window [of the arrestee's car] if the vehicle began to move."); *see also Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) (holding that the arresting officer's use of a taser was objectively reasonable, in part because the arrestee had refused to

-12-

comply with at least five of the officer's verbal commands and was generally "hostile, belligerent, and uncooperative"). Accordingly, we are satisfied that the facts, construed in the light most favorable to Shannon, establish a violation of a constitutional right. *See Krout*, 583 F.3d at 564.[4]

It remains to decide whether the constitutional right Officer Koehler allegedly violated was clearly established as of September 13, 2006, such that a reasonable official would have known that his actions were unlawful.[5] As the district court

---

[4]Shannon was convicted in state court of interfering with official acts, a misdemeanor offense that has as an element knowingly "resist[ing] or obstruct[ing] . . . a peace officer." *See* Iowa Code § 719.1. The district court found that it could not give preclusive effect to any issues of fact decided in the state court proceeding because the parties had not "sufficiently discussed" the basis for the conviction. 673 F. Supp. 2d at 783 n.14. The defendants mention the conviction in their opening brief on appeal, but only in passing. Consequently, the defendants have abandoned any possible issue preclusion defense (for this stage of the federal case at least) by failing to properly raise it in the district court or in their opening brief on appeal. *See Bechtold v. City of Rosemount*, 104 F.3d 1062, 1068 (8th Cir. 1997); *see also Chay-Velasquez v. Ashcroft*, 367 F.3d 751, 756 (8th Cir. 2004).

[5]We pause to note that the district court at one point suggested that factual disputes prevented it from deciding at least the first part of the qualified immunity inquiry before trial. *See* 673 F. Supp. 2d at 784 & n.15. Generally speaking, the existence of genuine issues of material fact does not mean that a district court may defer addressing a qualified immunity claim until after trial; qualified immunity, after all, "is 'an *immunity from suit* rather than a mere defense to liability[,] and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial,'" *Scott*, 550 U.S. at 376 n.2 (quoting *Mitchell*, 472 U.S. at 526); *see also id.* ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam))). When qualified immunity is raised at the summary judgment stage, the proper course is to view the facts and draw reasonable inferences in the light most favorable to the plaintiff—which "usually means adopting . . . the plaintiff's version of the facts"—and then to assess the constitutionality of the challenged conduct. *Scott*, 550 U.S. at 377-78. But we need not dwell on this, since the district

observed, this court has said many times that "[t]he right to be free from excessive force in the context of an arrest is clearly established under the Fourth Amendment's prohibition against unreasonable searches and seizures." *See, e.g.*, *Brown*, 574 F.3d at 499 (citing *Graham*, 490 U.S. at 396, among other cases). But the Supreme Court has made clear that reciting the "general proposition" established in *Graham v. Connor* "is not enough." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (quoting *Saucier*, 533 U.S. at 201-02). Rather, the Court emphasized in *Anderson v. Creighton*, 483 U.S. 635 (1987), that "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," *id.* at 640. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* (internal citation omitted).

Assuming once again that Shannon's story is true, the contours of the right at issue were sufficiently clear that a reasonable official standing in Officer Koehler's shoes would have understood that the amount of force he used was excessive. Long before September 13, 2006, this court (among others) had announced that the use of force against a suspect who was not threatening and not resisting may be unlawful. *See, e.g.*, *Bauer*, 713 F.2d at 412 ("Force can only be used to overcome physical resistance or threatened force . . . ." (quoting *Agee*, 490 F.2d at 212)); *Feemster*, 661 F.2d at 89 ("There is no occasion for the use of any force against a prisoner who quietly submits."); *see also Brown*, 574 F.3d at 499 ("[I]t is clearly established that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." (citing *Kukla v. Hulm*, 310 F.3d 1046, 1050 (8th Cir. 2002), and *Henderson v. Munn*,

---

court proceeded to address the second part of the qualified immunity inquiry. *See* 673 F. Supp. 2d at 784-86.

439 F.3d 497, 503 (8th Cir. 2006), among other cases)).[6]  Although Shannon greeted Officer Koehler in a disrespectful, even churlish manner, that alone did not make Officer Koehler's use of force acceptable under extant law.  *See Bauer*, 713 F.2d at 412 ("'[T]he use of any force by officers simply because a suspect is argumentative, contentious, or vituperative' is not to be condoned." (alteration in original) (quoting *Agee*, 490 F.2d at 212)).  We are convinced that the right Officer Koehler allegedly violated was clearly established as of September 13, 2006, such that a reasonable official would have known that his actions were unlawful, *see Krout*, 583 F.3d at 564; that is to say, the excessiveness of Officer Koehler's use of force was apparent, *see Anderson*, 483 U.S. at 640.  Thus, we affirm the district court's denial of qualified immunity to Officer Koehler.[7]

---

[6]We want to make clear that in this part of the qualified immunity inquiry, *Brown* is only relevant to the extent it describes the state of the law on September 13, 2006.  *Brown* was decided on July 22, 2009, so our opinion in *Brown* obviously could not have given "fair notice" to Officer Koehler that the actions he took nearly three years earlier were unlawful.  *See Brosseau*, 543 U.S. at 200 n.4.  Nevertheless, the court's analysis in *Brown* focused on legal principles that were clearly established on October 8, 2005, the date of the events giving rise to that case.  Thus, an objectively reasonable police officer at work on September 13, 2006, would have known about the principles of Fourth Amendment law applied in the pre-September 2006 authorities cited in *Brown*.  *See generally Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982) ("[A] reasonably competent public official should know the law governing his conduct.").

[7]The defendants assert in a footnote that if Officer Koehler is entitled to qualified immunity under federal law then all three defendants are immune from liability for assault and battery under Iowa law because the analysis of the federal and state immunity defenses is, supposedly, "the same."  We do not consider the issue of state-law immunity, however, as the defendants did not mention it in their notice of appeal, *see* Fed. R. App. P. 3(c)(1)(B); *Woodward v. Epps*, 580 F.3d 318, 333 (5th Cir. 2009) (citing *Lockett v. Anderson*, 230 F.3d 695, 699 (5th Cir. 2000)), *cert. denied*, 559 U.S. ---, 130 S. Ct. 2093 (2010), and their argument on that issue is skeletal at best, *see Chay-Velasquez*, 367 F.3d at 756.  Of course, even if we did consider the issue, that would be of no help to the defendants, for accepting their assertion that the

Returning at last to the scope of our jurisdiction over this appeal, we reject the defendants' assertion that we have pendent appellate jurisdiction to review either the district court's denial of summary judgment on the *Monell* claims against the City and Chief Frisbie or the district court's decision on the bifurcation issue.[8] Another panel of this court recently examined the doctrine of pendent appellate jurisdiction, *see Langford*, 2010 WL 2813551, at \*8-9, and we are not inclined to duplicate that analysis here. The only remotely plausible argument for exercising jurisdiction over the present defendants' pendent claims hinges on finding that those claims are "inextricably intertwined" with Officer Koehler's qualified immunity defense. *See id.* at 8. They are not.

"An issue is 'inextricably intertwined' with properly presented issues only 'when the appellate resolution of the collateral appeal necessarily resolves the pendent claims as well.'" *Lockridge v. Bd. of Trs. of Univ. of Ark.*, 315 F.3d 1005, 1012 (8th Cir. 2003) (en banc) (quoting *Kincade v. City of Blue Springs*, 64 F.3d 389, 394 (8th Cir. 1995)). Put differently, "[a] pendent appellate claim can be regarded as inextricably intertwined with a properly reviewable claim on collateral appeal only if the pendent claim is coterminous with, or subsumed in, the claim before the court on

---

analysis of the federal and state immunity defenses is identical would mean that the defendants' state-law immunity claims fall with Officer Koehler's federal immunity claim.

[8]It is common ground that both the denial of summary judgment on the *Monell* claims and the decision on the bifurcation issue are interlocutory orders, and that those orders are not immediately appealable under the collateral order doctrine. *See, e.g.*, *Shockency v. Ramsey County*, 493 F.3d 941, 952 (8th Cir. 2007) (noting that "[a] denial of summary judgment based on a *Monell* defense is not an appealable order under *Swint v. Chambers County Commission*, 514 U.S. 35 (1995), unless the defense is intertwined with a qualified immunity defense"); *In re Lieb*, 915 F.2d 180, 185 (5th Cir. 1990) (collecting cases holding that orders granting or denying separate trials under Rule 42(b) are "interlocutory and non-appealable before final judgment").

interlocutory appeal." *Kincade*, 64 F.3d at 394 (quoting *Moore v. City of Wynnewood*, 57 F.3d 924, 930 (10th Cir. 1995)).

Our decision to uphold the district court's denial of qualified immunity to Officer Koehler did not resolve whether the City and Chief Frisbie are entitled to summary judgment on the *Monell* claims, so those matters cannot be described as inextricably intertwined. *See, e.g.*, *Veneklase v. City of Fargo*, 78 F.3d 1264, 1270 (8th Cir. 1996) (concluding that the denial of summary judgment on a municipal liability claim was not inextricably intertwined with the underlying qualified immunity appeal because resolving the relevant claims "require[d] entirely different analyses"); *see also Cunningham v. Gates*, 229 F.3d 1271, 1285-86 (9th Cir. 2000) (explaining that whether a city's "policy, customs, or usage caused [the] plaintiffs' injuries is a separate inquiry from whether . . . non-supervisory officers are entitled to qualified immunity"). Likewise, our resolution of the qualified immunity appeal said nothing about the propriety of the district court's decision on the bifurcation issue, so those matters are not inextricably intertwined either. In short, the requirements for exercising pendent appellate jurisdiction are not met in this case because affirming the denial of qualified immunity to Officer Koehler did not resolve the pendent claims. Since we see no other source of jurisdiction to consider the pendent claims, we dismiss this appeal insofar as it challenges the district court's denial of summary judgment on the *Monell* claims against the City and Chief Frisbie and the district court's decision on the bifurcation issue.

## III.  CONCLUSION

For the foregoing reasons, we affirm the district court's denial of qualified immunity to Officer Koehler and dismiss the rest of the appeal for lack of jurisdiction.

_____