COLLOTON, Circuit Judge.
Danelle Hollingsworth was detained for booking at the police station in St. Ann, Missouri, after an arrest for stealing wine coolers from a convenience store at a gas station. When she refused a directive from police and corrections officers to change from her street clothes into an orange jumpsuit, a police officer stunned her with a Taser device to encourage compliance.
Hollingsworth later brought this action against the police officer, two corrections officers, and the City of St. Ann, pursuant to 42 U.S.C. § 1983. She alleged that police officer Robert McCallum violated her rights under the Fourth Amendment by using excessive force when he stunned her with the Taser. She claimed that corrections officers Johnny King and Joseph Mayberry violated her constitutional rights by failing to intervene. She further asserted that the City was liable for the violations because its policy regarding the use of Tasers was unconstitutional.
The district court[1] granted summary judgment for defendants on all claims, concluding that the officers were entitled to qualified immunity, and that the City’s Taser'poliey did not cause any potential violation of Hollingsworth’s rights. Hollingsworth appeals, and we affirm. We conclude that although the actions of one or more officers might have been unreasonable, their conduct did not violate clearly established law at the time of the incident. We also agree with the district court that the City is not liable.
*988 I.
The incident in question happened in the early morning hours of July 21, 2009. At about 1:30 a.m., Hollingsworth left a bar in St. Louis County, Missouri, and entered a gas station across the street. Hollingsworth had consumed several drinks, and admits she was “quite intoxicated,” but “not severely intoxicated where [she] couldn’t walk or focus.” Hollingsworth took $7.38 worth of wine coolers from the station and left without paying for them.
Shortly thereafter, police officers from St. Ann arrested Hollingsworth. According to Hollingsworth, she surrendered with her hands up. Officer Robert McCallum testified that she was belligerent, and that she was screaming and cursing at the officers. Hollingsworth has a “vague memory” of officers performing a pat-down search during the arrest.
Officers brought Hollingsworth to the St. Ann police station, where she was placed in a small processing room that was monitored by a video camera. Officer Mayberry brought an orange jumpsuit into the room. Officer King started the booking process by having Hollingsworth remove property from her person and fill out paperwork. According to Hollingsworth, she was compliant during this process.
King then instructed Hollingsworth to change into the orange jumpsuit. He informed her she was required to take off her bra but not her bottom underwear. Hollingsworth says she felt scared and asked to have a woman present while she changed clothes. After the officers left Hollingsworth alone in the processing room to change clothes, Hollingsworth sat on a concrete bench and refused to don the orange jumpsuit. A female dispatcher monitoring the video feed of the processing room informed officers that Hollingsworth was not changing clothes.
Officer McCallum then entered the room with a Taser, reiterated to Hollingsworth that she must change into the jumpsuit, and warned her that she would be tased if she did not change. Hollingsworth waived a finger at McCallum and said something to the effect that “you better not tase me.” McCallum then left the room and closed the door.
After the dispatcher watching the video feed reported that Hollingsworth still was not changing into the jumpsuit, McCallum re-entered the room and deployed the Taser on Hollingsworth. He shot one barb into her upper chest and one into her shoulder. McCallum applied energy through the Taser on Hollingsworth for five seconds. During this interval, McCallum also touched the end of the Taser onto Hollingsworth’s inner thigh. After the first application, McCallum stopped for five seconds and told Hollingsworth to change clothes. She replied by directing an expletive at McCallum, and McCallum then applied another five seconds of energy through the Taser.
Hollingsworth testified she suffered “excruciating pain ... like something was being ... shocked through [her] legs” when she was tased. Two days after the incident, Hollingsworth continued to suffer leg spasms. She visited a hospital, where doctors prescribed muscle relaxants.
In July 2009, the City of St. Ann had a written policy on “Use of Stun Type Device.” The policy stated that stun devices “shall be applied to [a] subject until resistance has ceased, or the subject complies with officer’s commands, and the subject is no longer a threat.” The policy provided that “[b]ecause a handcuffed, or restrained subject can still be noncompliant, or even a substantial threat, the use of a Stun Device may be permissible as discretion dictates.” Sergéant Sam Barrale, who trained McCallum and others on the use of Tasers, testified that the City’s policy authorized the use of a Taser when an officer’s safety *989 is threatened by an individual, including when a threat is foreseeable and could be prevented by use of the stun device. Barrale also testified that a Taser is not to be used for “punishment” or “coercion.”
Hollingsworth brought this action pursuant to 42 U.S.C. § 1983 against McCallum, King, Mayberry, and the City of St. Ann, alleging, as relevant on appeal, that they violated her Fourth Amendment right to be free from excessive force. The district court granted summary judgment for the defendants. The court ruled that McCallum, King, and Mayberry were entitled to qualified immunity because it was not clearly established at the time of Hollingsworth’s arrest that a use of force that resulted in only de minimis injury could constitute an unreasonable seizure based on an excessive use of force. The court dismissed the claim against the City on the ground that the City’s policy on use of stun devices did not cause McCallum to deploy the Taser. We review the district court’s grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party.
II.
The parties agree that the conduct of the officers at issue here was governed by the Fourth Amendment. Their submission is consistent with our precedents, which have applied the Fourth Amendment when resolving excessive force claims arising during transportation, booking, and initial detention-of recently arrested persons. See Chambers v. Pennycook, 641 F.3d 898, 905 (8th Cir.2011) (citing cases); cf. Kingsley v. Hendrickson, — U.S. -, 135 S.Ct. 2466, 2479, 192 L.Ed.2d 416 (2015) (Alito, J., dissenting). An officer’s use of force violates the Fourth Amendment if it is objectively unreasonable in light of the facts and circumstances of the particular case, as “judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.” Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).
In § 1983 actions, qualified immunity shields government officials from suit unless their conduct violated a clearly established right of which a reasonable official would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). “The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.” Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In a series of recent decisions, the Supreme Court has emphasized that for a plaintiff to overcome qualified immunity, existing precedent must have placed the constitutional question “beyond debate.” City & Cnty. of S.F., Calif v. Sheehan, — U.S. -, 135 S.Ct. 1765, 1774, 191 L.Ed.2d 856 (2015) (internal quotation omitted); see Carroll v. Carman, — U.S. -, 135 S.Ct. 348, 350, 190 L.Ed.2d 311 (2014); Plumhoff v. Rickard, — U.S. -, 134 S.Ct. 2012, 2023, 188 L.Ed.2d 1056 (2014); Stanton v. Sims, — U.S.-, 134 S.Ct. 3, 4-5, 187 L.Ed.2d 341 (2013); Ashcroft v. al-Kidd, 563 U.S. 731, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011). “When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law.” Taylor v. Barkes, — U.S.-, 135 S.Ct. 2042, 2044, 192 L.Ed.2d 78 (2015) (alteration in original) (internal quotation omitted).
Hollingsworth contends that McCallum violated clearly established law, because there was no justification for the use of any force against her in the holding cell. She points to dicta in Agee v. Hickman, 490 F.2d 210 (8th Cir.1974), that the court — by upholding a particular use of force — did “not mean to condone ... the *990 use of any force by officers simply because a suspect is argumentative, contentious or vituperative.” Id. at 212. She cites the court’s statement in Feemster v. Dehntjer, 661 F.2d 87 (8th Cir.1981), that “[t]here is no occasion for the use of any force against a prisoner who quietly submits.” Id. at 89. And she draws on the conclusion in Shannon v. Koehler, 616 F.3d 855 (8th Cir. 2010), that where a citizen was not suspected of committing a crime, did not resist arrest, and did not threaten anyone, we could not say that “a reasonable officer ... would have felt the need to use any force.” Id. at 863. Hollingsworth also relies on Hickey v. Reeder, 12 F.3d 754 (8th Cir.1993), an Eighth Amendment case in which the court held that the use of a stun gun on a nonviolent inmate solely to enforce a “housekeeping order” to sweep his cell violated the inmate’s right to be free from cruel and unusual punishment. Id. at 759.
These cases are inapposite because they involve or contemplate situations where there was no justification for the use of any force. Here, Hollingsworth repeatedly refused to change from her street clothes into an orange jumpsuit when she was booked into the jail. The officers had a legitimate safety reason for requiring the change of clothes. King testified that it was the city’s policy to require all prisoners to change into a jumpsuit. McCallum testified that it was important for arrestees to change into jumpsuits to “insure safety of themselves and other people in the facility,” and to allow officers to search for contraband. Recent arrestees may have contraband or weapons concealed in their street clothes, and introduction of such objects into the jail could threaten the safety of officers, detainees, or others. A requirement to change clothes is a reasonable means to maintain institutional safety and to preserve internal order. See Stanley v. Henson, 337 F.3d 961, 966 (7th Cir.2003); cf. Kelsey v. County of Schoharie, 567 F.3d 54, 64 (2d Cir.2009) (“A clothing exchange is a common practice in jails and prisons as is the need for corrections officers to be vigilant at all times.”). After Hollingsworth was recalcitrant, it was not unreasonable for officers to use some force to cause her to wear the orange jumpsuit.
The issue in this case is whether McCallum, having justification to use some force to cause Hollingsworth to change into an orange jumpsuit, violated her clearly established rights by deploying the Taser rather than employing other means such as physical restraint and forcible removal of clothing. Cf. Peters v. Risdal, 786 F.3d 1095 (8th Cir.2015). As we have explained in other decisions, it was an open question at the time of this incident in July 2009 whether a plaintiff must demonstrate greater than de minimis injury to establish an excessive force claim under the Fourth Amendment. Chambers, 641 F.3d at 904; see also Peterson v. Kopp, 754 F.3d 594, 601 (8th Cir.2014); Bishop v. Glazier, 723 F.3d 957, 962 (8th Cir.2013). The district court, citing a concession by Hollingsworth, concluded that her injuries were de minimis, and she does not dispute that point on appeal. Therefore, Hollingsworth can prevail only if it was clearly established in July 2009 that use of a Taser that caused de minimis injury violated the Fourth Amendment.
Hollingsworth’s claim founders on our decision in LaCross v. City of Duluth, 713 F.3d 1155 (8th Cir.2013). LaCross held that it was not clearly established in 2006 that an officer’s use of a Taser that resulted in no lasting physical injuries or injuries requiring medical care nonetheless could be unreasonable because Tasers caused “excruciating pain without lasting physical effects.” LaCross, 713 F.3d at 1157-58. This court held that despite the Taser’s unique capability to cause high *991 levels of pain without long-term injury, “we have not categorized the Taser as an implement of force whose use establishes, as a matter of law, more than de minimis injury.” Id. at 1158. We thus concluded it was not clearly established that an officer’s use of a Taser, resulting in only de minimis injury, was an unconstitutional use of force. Id. The law was not materially different in July 2009, so McCallum is entitled to qualified immunity. “ ‘[A] reasonable officer could have believed that as long as he did not cause more than de minimis injury to an arrestee, his actions would not run afoul of the Fourth Amendment.’ ” Bishop, 723 F.3d at 962 (quoting Chambers, 641 F.3d at 908).
Hollingsworth also invokes Brown v. City of Golden Valley, 574 F.3d 491 (8th Cir.2009), where this court ruled that an officer violated clearly established rights in 2005 by using a Taser against “a nonviolent, suspected misdemeanant who was not fleeing or resisting arrest, who posed little to no threat to anyone’s safety, and whose only noncompliance with the officer’s commands was to disobey two orders to end her phone call to a 911 operator.” Id. at 493, 499. The officer in Brown tased the plaintiff as she sat in the passenger seat of a car and spoke with a 911 operator on her cell phone during a traffic stop. Id. at 494, 496. Brown, however, did not address whether the plaintiffs injuries were de minimis — the plaintiff alleged that she suffered bruises and welts on her arms, problems sleeping, difficulties focusing, and anxiety-related symptoms when she saw police after the incident, and that she was prescribed anti-anxiety medication. Id. at 495. Broum thus had no occasion to consider whether it was clearly established that de minimis injury could sustain an excessive force claim under the Fourth Amendment, and LaCross distinguished Browm on precisely that basis. 713 F.3d at 1158 n. 4.
Qualified immunity also shields King and Mayberry from suit on the claims alleging an unreasonable failure to intervene. This court had established by July 2009 that “an officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the Fourth Amendment.” Nance v. Sammis, 586 F.3d 604, 612 (8th Cir.2009). To establish a failure to intervene claim, however, the plaintiff must show that the “officer observed or had reason to know that excessive force would be or was being used.” Id. Here, because it was not clearly established that McCallum’s actions constituted excessive force, a reasonable officer was not on fair notice that his failure to intervene when McCallum deployed the Taser violated Hollingsworth’s Fourth Amendment rights.
III.
Hollingsworth separately challenges the district court’s conclusion that the City of St. Ann was not liable for any violation of her Fourth Amendment rights. See Monell v. Dep’t of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The district court ruled that even assuming McCallum acted unreasonably, the City’s Taser policy did not cause McCallum to use the Taser on Hollingsworth. The court reasoned that McCallum did not act pursuant to City policy, because he testified that he used the Taser in order to ensure compliance with a safety protocol, and the policy did not provide for use in that situation. We affirm for related reasons: the City’s Taser policy was not unlawful on its face, and Hollingsworth did not present evidence that the City was deliberately indifferent to her Fourth Amendment rights.
A municipality may be liable under § 1983 where “action pursuant to *992 official municipal policy of some nature caused a constitutional tort.” Monell, 436 U.S. at 691, 98 S.Ct. 2018. A municipality, however, cannot be held liable solely because it employs a tortfeasor. Id. Two of the circumstances in which municipality liability can arise warrant discussion here: First, where a particular municipal action or policy “itself violates federal law, or directs an employee to do so,” and second, where “an official policy is lawful on its face and does not compel unconstitutional action” but “municipal action has led an employee to violate a plaintiffs rights,” and that action was “taken with ‘deliberate indifference’ as to its known or obvious consequences.” Szabla v. City of Brooklyn Park, 486 F.3d 385, 389-90 (8th Cir. 2007) (en banc) (quoting in part Bd. of the County Comm’rs v. Brown, 520 U.S. 397, 404, 407, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).
The City’s policy on the use of a “stun type device” was not unlawful on its face and did not compel unconstitutional action. The written policy allowed officers to use a Taser in response to a threat, and training officer Barrale said it permitted use when a detainee presented a non-immediate, but “foreseeable” threat. But both the written policy and Barrale’s oral supplement specified that officers were vested with discretion about when to deploy the Taser. Barrale testified that the City’s policy prohibited the use of the Taser for “punishment”’ or “coercion,” and nothing in the policy directed McCallum to use a stun type device to cause a detainee to change from street clothes into an orange jumpsuit. The policy allowed for discretion and was not unlawful on its face. See Seymour v. City of Des Moines, 519 F.3d. 790, 800 (8th Cir.2008).
Hollingsworth also has not made a submissible case that the City acted with deliberate indifference to her Fourth Amendment rights by failing to prevent McCallum from using the Taser when a detainee presented no immediate threat. Assuming for the sake of analysis that McCallunfs use of the Taser was unreasonable, Hollingsworth presented no evidence of a pattern of such use by officers in St. Ann. While a single constitutional violation arising out of a lack of safeguards or training may be sufficient to establish deliberate indifference where the need for such safeguards or training is “obvious,” a municipality “cannot exhibit fault rising to the level of deliberate indifference to a constitutional right when that right has not yet been clearly established.” Szabla, 486 F.3d at 393. As it was not clearly established in July 2009 that force resulting in only de minimis injury could violate the Fourth Amendment, the City did not act with deliberate indifference by failing to train its officers that use of a Taser in these circumstances was impermissible.
The judgment of the district court is affirmed.

. The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.