# United States Court of Appeals

## For the Eighth Circuit

_____

No. 18-1057

_____

Tamela Muir

*Plaintiff - Appellee*

v.

Decatur County, Iowa; Ben Boswell, Sheriff

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: December 12, 2018
Filed: March 8, 2019

_____

Before LOKEN, MELLOY, and ERICKSON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Plaintiff Tamela Muir was fired by the acting Decatur County Sheriff, Ben Boswell, shortly after her husband, Bert Muir, had been removed as Sheriff. Tamela alleges that Boswell fired her simply because she was married to Bert and that Boswell therefore violated her First Amendment right to intimate association. Boswell and Decatur County moved for summary judgment, arguing that Boswell was

entitled to qualified immunity and that the County was not subject to liability. The district court denied summary judgment. We reverse.

## I. Background

The three main parties in this case are Tamela Muir, Bert Muir, and Ben Boswell. Until recently, all three worked for the Decatur County Sheriff's Office ("DCSO"). Tamela began working for the DCSO in November 1996 as a jailer and dispatcher. Her employment was at-will. Bert started working for the DCSO on March 19, 1998, when he was elected Sheriff. He hired Boswell as a Deputy Sheriff in September 2001. Tamela married Bert on January 11, 2008, and Boswell attended their wedding. The DCSO had no policy that prevented Bert and Tamela from continuing to work together as a married couple.

In November 2015, Boswell received a complaint from a female dispatcher who alleged that Bert had sexually harassed her. An investigation followed and uncovered additional allegations of harassment. Because the County Attorney was going to be called as a witness, the County hired Thomas Miller, a former criminal prosecutor, to prepare a petition to remove Bert as Sheriff. The petition was supported by affidavits from six DCSO employees. Miller presented Bert with the petition for removal on March 4, 2016, and Bert immediately resigned. That same day, Boswell was named acting Sheriff, and Miller advised him that he should consider placing Tamela on administrative leave. Miller was concerned that "problems" might arise if Tamela "was allowed to remain working around employees whom her husband had harassed, and who had signed affidavits in support of her husband's removal from office." Boswell agreed and placed Tamela on indefinite administrative leave on March 4, 2016.

On March 28, 2016, Boswell sent a letter to Tamela telling her that he intended to terminate her employment. In the letter, Boswell explained that he did not want

the DCSO employees "who experienced harassment to perceive that [her] return to employment threaten[ed] the work environment in different ways due to loyalty to [her] husband, past loyalties to him as the former Sheriff or for other reasons." Specifically, Boswell was concerned that employees would fear "retaliation towards them in response to their testimony which resulted in Bert's resignation." Boswell concluded that he needed "to have absolute trust in the employees who work for [him]" and that he "would not have this trust in [her] were [she] to return to work." On April 21, Boswell sent Tamela another letter confirming that he had officially terminated her employment.

On June 6, 2016, Tamela filed suit under 42 U.S.C. § 1983, alleging First Amendment retaliation. More specifically, she alleged that Decatur County and Boswell, in his individual and official capacity, violated her First Amendment right to intimate association by firing her simply because she was married to Bert. Boswell and Decatur County moved for summary judgment arguing that Boswell was entitled to qualified immunity and that Decatur County was not liable for his actions. The district court denied their motion, finding that (1) Boswell was not entitled to qualified immunity because Tamela and Bert's marriage was a motivating factor in his decision to fire Tamela; and (2) Decatur County could be subject to municipal liability because Boswell's decision to fire Tamela might have constituted an unconstitutional custom, practice, or policy of the County.

## II. Jurisdiction

We have limited jurisdiction over an appeal from a denial of qualified immunity. Shannon v. Koehler, 616 F.3d 855, 861 (8th Cir. 2010). Our jurisdiction "extends only to 'abstract issues of law,' not to 'determination[s] that the evidence is sufficient to permit a particular finding of fact after trial.'" Id. (alteration in original) (quoting Krout v. Goemmer, 583 F.3d 557, 564 (8th Cir. 2009)). "Appellate review in these circumstances is therefore limited to 'determin[ing] whether all of the

-3-

conduct that the district court "deemed sufficiently supported for purposes of summary judgment" violated the plaintiff's clearly established federal rights.'" Id. (alteration in original) (quoting Lockridge v. Bd. of Trs. of Univ. of Ark., 315 F.3d 1005, 1008 (8th Cir. 2003) (en banc)). We also have jurisdiction over pendent claims if they are "inextricably intertwined" with a qualified immunity claim. Id. at 866. A pendent claim is inextricably intertwined with a qualified immunity claim only if resolution of the qualified immunity claim "necessarily resolves the pendent claim[] as well." Id. (citation omitted).

### III. Standard of Review

We review de novo a denial of summary judgment on qualified immunity grounds. Nord v. Walsh Cty., 757 F.3d 734, 738 (8th Cir. 2014). Whether a government official is entitled to qualified immunity requires a two-step analysis: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." Id. (quoting Winslow v. Smith, 696 F.3d 716, 731 (8th Cir. 2012)). This Court has discretion to decide which question is addressed first. Id. at 738–39. If the answer to either question is no, the official is entitled to qualified immunity. Id. at 738.

### IV. Discussion

### A. Qualified Immunity

The outcome of this case is controlled by our decision in Singleton v. Cecil, 133 F.3d 631 (8th Cir. 1998), rev'd on other grounds, 155 F.3d 983 (8th Cir. 1998), aff'd en banc, 176 F.3d 419 (8th Cir. 1999), cert. denied, 528 U.S. 966 (1999). In Singleton, we considered whether the City of Advance, Missouri, violated a police officer's right to intimate association when it terminated him "because his wife and daughter had plotted to frame the police chief." Id. at 632. We recognized that the right to intimate association protects "the formation and preservation of certain kinds

-4-

of highly personal relationships," including marriage. Id. at 635 (quoting Roberts v. United States Jaycees, 468 U.S. 609, 618 (1984)). We further acknowledged that the right to marriage has "been cast as a substantive due process right, and as an associational right," but we noted that "[t]he nominal source of th[e] right . . . does not alter [our] analysis." Id. (citation omitted). Indeed, we determined that when reviewing an intimate association, right-to-marry claim, the key question is whether the government "directly and substantially interfere[d] with the . . . right to enter and maintain [a] marital relationship." Id. In other words, the right to marry "does not invalidate every state action that has some impact on marriage." Id. at 634. Rather, there must be evidence that the government "significantly discouraged" a marriage, made a marriage "practically impossible," or "acted with the goal of poisoning" a marriage. Id. at 635 (citation omitted). We concluded in Singleton that the City of Advance's decision to terminate the police officer "on the basis of his wife's conduct" did not violate his right to intimate association. Id.

In light of our decision in Singleton, we conclude that Boswell's termination of Tamela did not amount to a constitutional violation. The fact that Tamela and Bert's marriage was a motivating factor in Boswell's decision to terminate Tamela does not mean that Boswell directly and substantially interfered with their marriage. Indeed, Boswell did not significantly discourage their marriage, make their marriage practically impossible, or act with the goal of poisoning their marriage. Singleton, 133 F.3d at 635. Miller advised Boswell to put Tamela on administrative leave, which he did. While Tamela was on leave, Boswell decided that her return would create a hostile work environment due to her loyalty to Bert. He then documented this concern in her termination letter. Ultimately, "action having only a collateral effect on family decisions typically does not violate [the right to marry]," and there is no suggestion that Tamela's termination had anything more than a collateral effect on her marriage to Bert. Id. at 635; cf. Tyler v. City of Mountain Home, 72 F.3d 568, 570 (8th Cir. 1995) ("Because police departments function as paramilitary organizations charged with maintaining public safety and order, they are given more

latitude in their decisions regarding discipline and personnel regulations than an ordinary government employer." (citation omitted)). But see Gaspers v. Ohio Dep't of Youth Servs., 648 F.3d 400, 413 (6th Cir. 2011) (stating that in "cases challenging purported acts of retaliation that affect the right of marriage . . . the loss of a job because of a protected marital relationship 'constitutes undue intrusion by the state in that relationship'" (citations omitted)).

## B. Municipal Liability

We have jurisdiction over the municipal liability issue because we conclude Boswell committed no unconstitutional act, and that conclusion "necessarily resolves" the municipal liability issue. Shannon, 616 F.3d at 866. As we held in Webb v. City of Maplewood, "'there must be an unconstitutional act by a municipal employee' before a municipality can be held liable." 889 F.3d 483, 487 (8th Cir. 2018) (citation omitted). Thus, because Boswell committed no unconstitutional act, no municipal liability can attach to Decatur County.

## V. Conclusion

For the foregoing reasons, we reverse the judgment of the district court.

_____