COLLOTON, Circuit Judge.
Kendrick C. Story, an African-American inmate in Arkansas, sued four correctional officers pursuant to 42 U.S.C. § 1983, alleging that they violated his constitutional rights and seeking damages. Story’s pro se complaint and amended complaint focus on a visual body-cavity search that one or more officers allegedly conducted of Story’s person on April 16, 2013. The search occurred after Story returned to the Williams Correctional Facility from the Pine Bluff unit school. The district court,[1] screening the complaints before service of process pursuant to 28 U.S.C. § 1915A, dismissed them without prejudice for failure to state a claim. Story appealed, and this court requested a response from the correctional officers concerning Story’s claims under the Fourth Amendment. We review the dismissal de novo and affirm.
To state a claim, Story’s complaint “must contain sufficient factual matter, accepted as true, to ‘state a claim to relief that is plausible on its face.’ ” Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) {quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Correctional officers are entitled to qualified immunity unless they violated clearly established rights of the inmate of which a reasonable person would have known, see Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), and we may consider the defense of* qualified immunity in reviewing the dis *970 trict court’s preservice dismissal. See 28 U.S.C. § 1915A(b)(2); Maness v. Nisi. Court, Logan Cnty.-N. Div., 495 F.3d 943, 944-45 (8th Cir.2007); Burlison v. United States, 627 F.2d 119, 122 (8th Cir.1980). Although the district court dismissed the complaints for failure to state a claim without addressing qualified immunity, we may affirm on any ground supported by the record. Jacobson v. McCormick, 763 F.3d 914, 916-17 (8th Cir.2014); Graves v. City of Coeur d’Alene, 339 F.3d 828, 845 n. 23 (9th Cir.2003). It is unnecessary and inefficient to address whether Story adequately pleaded a constitutional violation, see Pearson, 555 U.S. at 236-37, 129 S.Ct. 808, if the defense of qualified immunity is established on the face of the complaint.
“Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law.” Stanton v. Sims, — U.S. -, 134 S.Ct. 3, 5, 187 L.Ed.2d 341 (2013) (internal quotation marks omitted). To overcome qualified immunity, a plaintiff must be able to prove that “every reasonable official would have understood that what he is doing violates” a constitutional right, Ashcroft v. al-Kidd, — U.S. -, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011) (internal quotation marks omitted), and that the constitutional question was “beyond debate.” Id.; see also Lane v. Franks, — U.S. -, 134 S.Ct. 2369, 2383, 189 L.Ed.2d 312 (2014); Stanton, 134 S.Ct. at 7.
Story’s lead point on appeal is that he stated a claim that the defendants violated his Fourth Amendment rights by conducting a visual body-cavity search of his person. According to the complaint and materials attached thereto, Story returned on the date in question to the Williams Correctional Facility from the Pine Bluff unit school. When he arrived at the gate, he was met by Captain John Herrington and Major Maxcie Foote. Story alleges that officers told him to remove his clothes, to lift his genitals, and to bend over and spread his buttocks to facilitate a visual body-cavity search. He claims that the search took place in front of other inmates and in view of two security cameras. He complains that one or more female correctional officers observed the search through a video feed from the cameras in the master control room.
The Supreme Court never has resolved whether convicted inmates retain a Fourth Amendment right against, unreasonable searches while in custody. The Court in Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), assumed the point for the sake of analysis. Id. at 557, 99 S.Ct. 1861. In Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Court held that the Fourth Amendment did not apply to a search of a prison cell, reasoning that “[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.” Id. at 527-28, 104 S.Ct. 3194. The Seventh Circuit, in the wake of Hudson, ruled that inmates retain no right under the Fourth Amendment against visual inspections by prison guards. Johnson v. Phelan, 69 F.3d 144, 146-47 (7th Cir.1995). This court, however, has said that “prison inmates are entitled to Fourth Amendment protection against unreasonable searches of their bodies,” Levine v. Roebuck, 550 F.3d 684, 687 (8th Cir.2008), and allowed a Fourth Amendment claim challenging strip searches to proceed in Seltzer-Bey v. Delo, 66 F.3d 961, 963 (8th Cir.1995). The Arkansas Supreme Court, as best we can tell, has never addressed the question. The *971 Supreme Court recently has reserved judgment twice on the question whether decisions of a federal court of appeals are a source of clearly established law for purposes of qualified immunity analysis. See Carroll v. Carman, — U.S. -, 135 S.Ct. 348, 350, 190 L.Ed.2d 311 (2014) (per curiam); Reichle v. Howards, — U.S. -, 132 S.Ct. 2088, 2094, 182 L.Ed.2d 985 (2012). Following the approach of the Court in those cases, we assume for the sake of analysis that our decisions clearly establish that a convicted inmate has rights under the Fourth Amendment against unreasonable searches of his body.
Whether Story’s allegations state a claim that correctional officers violated his clearly established rights under the Fourth Amendment must be considered in light of prior decisions in this area. In Wolfish, the Supreme Court ruled that visual body-cavity inspections of inmates at a federal custodial facility — conducted after every contact visit with a person from outside the institution — were not unreasonable. 441 U.S. at 558 & n. 39, 99 S.Ct. 1861. In Goff v. Nix, 803 F.2d 358 (8th Cir.1986), this court held that it was reasonable for officials to conduct visual body-cavity searches of inmates at a state penitentiary whenever an inmate left or entered the institution. Id. at 364-67. Most recently, in Florence v. Board of Chosen Freeholders of County of Burlington, — U.S. -, 132 S.Ct. 1510, 182 L.Ed.2d 566 (2012), the Court ruled that correctional officers must be allowed to conduct an effective search of detainees — even those held for minor offenses — before they are admitted to a general jail population, and that “this will require at least some detainees to lift their genitals or cough in a squatting position.” Id. at 1520.
These decisions, while acknowledging the privacy concerns of inmates, emphasize that detention facilities are “fraught with serious security dangers,” Wolfish, 441 U.S. at 559, 99 S.Ct. 1861, and that correctional institutions have a strong interest in preventing and deterring the smuggling of money, drugs, weapons, and other contraband. Florence, 132 S.Ct. at 1516-17; Wolfish, 441 U.S. at 559, 99 S.Ct. 1861; Goff, 803 F.2d at 364-65. “[Maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees.” Wolfish, 441 U.S. at 546, 99 S.Ct. 1861.
Here, Story alleges that officers conducted a visual body-cavity inspection when Story returned to the Williams facility from outside the institution. Given what the Supreme Court and this court have said about the strong institutional interests in maintaining security, and about the reasonableness of visual body-cavity inspections when detainees enter a facility, Story’s allegation of a body-cavity search by itself does not state a claim for the violation of a clearly established right.
Story argues, however, that the manner in which this particular search was conducted violated the Fourth Amendment. He highlights an allegation that a female correctional officer was working in the master control room at the time of the search, and that she viewed the search on a video screen. He cites this court’s statement — in a case about a strip search of an arrestee in a motel room — that “strip searches should be conducted by officials of the same sex as the individual to be searched.” Richmond v. City of Brooklyn Center, 490 F.3d 1002, 1008 (8th Cir.2007).
The search in this case, consistent with Richmond’s general admonition, was con-, ducted by male correctional officers. Story does not allege that the male officers knew that female officers would observe *972 the video feed from the master control unit. In any event, the male officers did not violate Story’s clearly established rights by conducting the inspection in a location where a female officer also may have viewed the search from the master control room through a video feed from a security camera. This court in Timm v. Gunter, 917 F.2d 1093 (8th Cir.1990), held that prison administrators did not violate the Fourth Amendment rights of inmates by allowing intermittent visual surveillance of male inmates by female guards while the inmates used showers and bathrooms or slept without clothing in their cells. Our opinion cited the “rational connection between sex-neutral visual surveillance of inmates and the goal of prison security,” and observed that staffing adjustments (akin to removing female officers from the master control room during searches in this case) would interfere with equal employment opportunities for women and require significant expenditures by the prison. Id. at 1102. We also have held that the use of cameras to monitor activities from a control booth is reasonable, even when body-cavity searches are involved. Franklin v. Lockhart, 883 F.2d 654, 656 (8th Cir.1989). In light of these precedents, it was not beyond debate that a reasonable correctional officer was forbidden to proceed with a visual body-cavity search in an area monitored by security cameras while a female officer was assigned to the master control unit.
Story also complains that officers conducted the search in the presence of other inmates. As a general proposition, the Fourth Amendment requires a balancing of the need for a particular search against the invasion of personal rights involved. Wolfish, 441 U.S. at 558, 99 S.Ct. 1861. In .Franklin, however, this court held reasonable a practice of conducting visual body-cavity searches within view of five inmates, at least where the record did not support a finding that a less public means of searching was consistent with institutional security. 883 F.2d at 656-57. The Ninth Circuit similarly upheld body-cavity searches conducted, in a “sally port” area that was visible to other inmates and to female officers working in a “control bubble,” at least where there were no ready alternatives that would enhance privacy without compromising security or increasing cost. Michenfelder v. Sumner, 860 F.2d 328, 333 (9th Cir.1988).
Story does not allege that a more private, yet equally secure and cost-effective means of conducting the body-cavity inspection was readily available to the officers. The Supreme Court, moreover, has not clearly established that the presence of other inmates renders a body-cavity search unreasonable. Story cites no circuit precedent that has established the proposition; an unpublished and non-precedential decision concerning strip searches in a prison yard, Mills v. White, 364 Fed.Appx. 308, 309 (8th Cir.2010) (per curiam), is insufficient to make the asserted right clear. See Blazek v. City of Iowa City, 761 F.3d 920, 925 n. 3 (8th Cir.2014). Generally speaking, “[t]he Fourth Amendment does not require officers to use the least intrusive or less intrusive means to effectuate a search but instead permits a range of objectively reasonable conduct.” Richmond, 490 F.3d at 1009 (internal quotation marks omitted). We therefore conclude that the alleged presence of other inmates during Story’s search does not state a claim for the violation of clearly established rights.
Story next contends that Foote unreasonably conducted the search when he called Story a “monkey” after Story was unable to bend over as far as Foote wanted Story to bend. To be sure, body-cavity searches should not be performed “in a *973 degrading, humiliating or abusive fashion.” Id. Abusive conduct by searching officers — such as “insultingly suggestive remarks or banal but terrifying expressions of aggression,” U.S. ex rel. Wolfish v. Levi, 439 F.Supp. 114, 147 (S.D.N.Y.1977) — cannot be condoned. Wolfish, 441 U.S. at 560, 99 S.Ct. 1861. We cannot say, however, that Foote’s single alleged use of the term “monkey,” even with its potential racial overtones, is sufficient to allege the violation of a clearly established right under the Fourth Amendment. Story cites no supporting case with analogous facts, and recent decisions rejecting Fourth Amendment claims based on verbal abuse alone militate against a conclusion that the alleged unlawfulness of Foote’s manner of searching was beyond debate. See Dawson v. Anderson County, Tex., 566 Fed.Appx. 369, 371 (5th Cir.2014) (holding that “verbal abuse by a jailer alone” did not give rise to a Fourth Amendment claim for unreasonable strip search); Gettridge v. Jackson Parish Corr. Ctr., No. 3:12-cv-3148, 2013 WL 1180919, at *3 (W.D.La. Feb. 19, 2013) (holding that claims of “verbal abuse or ridicule” during a strip search are not actionable under § 1983); cf. Lewis v. Jacks, 486 F.3d 1025, 1028 (8th Cir.2007) (“Verbal abuse by correctional officials, even the use of reprehensible racially derogatory language, is not by itself unconstitutional race discrimination unless it is pervasive or severe enough to amount to racial harassment.”) (internal quotation marks omitted).
For these reasons, we conclude that Story has not alleged sufficient facts to support a plausible claim that the visual body-cavity inspection conducted of his person on April 16, 2013, violated his clearly established constitutional rights. The officers were not on clear notice that the aspects of the search to which Story objects — examined individually or taken together — contravened the Fourth Amendment.
We have considered Story’s other claims alleging violations of the Eighth Amendment and the Fourteenth Amendment, and we conclude that they were properly dismissed, substantially for the reasons given by the district court. See 8th Cir. R. 47B.
The judgment of the district court is affirmed.

. The Honorable D. Price Marshall, Jr., United States District Judge for the Eastern District of Arkansas.