# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1823

_____

Kayla Robinson

*Plaintiff - Appellee*

v.

Angela Hawkins, individually and in her official capacity; Kelli Swinton, individually and in her official capacity

*Defendants - Appellants*

St. Louis Board of Police Commissioners; Richard Gray, In his official capacities as a member of the St. Louis Board of Police Commissioners; Bettye Battle-Turner, In her official capacities as a member of the St. Louis Board of Police Commissioners; Thomas J. Irwin, In his official capacities as a member of the St. Louis Board of Police Commissioners; Erwin Switzer, In his official capacities as a member of the St. Louis Board of Police Commissioners; Francis G. Slay, In his official capacities as a member of the St. Louis Board of Police Commissioners

*Defendant*s

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 16, 2019
Filed: September 5, 2019

_____

Before SMITH, Chief Judge, COLLOTON and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Kayla Robinson sued Officers Angela Hawkins and Kelli Swinton for civil conspiracy and Officer Hawkins for excessive force and performing an unreasonable search.[1] The officers moved for summary judgment, and the district court denied their motion. The officers now appeal that denial. Because Robinson has not stated facts sufficient to support a finding of civil conspiracy or excessive force, we reverse the district court in part. We affirm that portion of the district court's opinion denying Officer Hawkins summary judgment on the unreasonable search claim.

## I.    Background

We view the facts in a light most favorable to Kayla Robinson, the non-moving party to the summary judgment. On October 19, 2012, St. Louis Metropolitan Police Department (SLMPD) Officers Angela Hawkins and Joseph Speiss were among a group of officers conducting a police checkpoint. At approximately 10:30 p.m., Robinson's boyfriend—who was driving Robinson's car while she sat in the front passenger seat—made an illegal U-turn, apparently to avoid the checkpoint. Officers from the checkpoint then conducted a traffic stop on Robinson's car.

As Officer Hawkins approached the stopped car she saw Robinson's boyfriend hand something to Robinson, and Robinson "taking her hands out of the front of her waistband." *Robinson v. City of St. Louis, Mo.*, No. 4:17-CV-156-PLC, 2018 WL 1695534, at *3 (E.D. Mo. Apr. 6, 2018). Officer Hawkins suspected that Robinson and her boyfriend had exchanged drugs or a weapon. Once she reached the car, Officer Hawkins asked Robinson to show her hands and step outside. Robinson complied. Officer Hawkins then handcuffed Robinson and performed a pat-down search which failed to reveal the presence of any contraband. Officer Hawkins then asked Robinson what she had placed in her waistband, and Robinson admitted to

_____

[1]Robinson also sued other parties not subject to this appeal.

having attempted to hide some marijuana. Officer Hawkins told Robinson to retrieve the marijuana, but Robinson asked to be brought to the police station to retrieve the marijuana there. Officer Hawkins refused, citing officer safety concerns.

Officer Hawkins moved Robinson to a nearby parking lot behind a tractor-trailer, intending to complete the search for the drugs that Robinson had admitted were in her possession. While being moved, Robinson continued to object to the search in the parking lot and asked to be taken to the station. According to Robinson Officer Hawkins said, "Bitch, no, we're doing this right now" and yelled at her repeatedly in response to her desire to be taken to the station, calling her a "f*cking dope fiend." Hawkins requested rubber glovers over the radio. Sgt. Mark McMurry, another SLMPD officer, drove up "alongside the trailer" and delivered a pair of gloves. Once in location Robinson retrieved the marijuana. Officer Hawkins remained convinced that Robinson was likely hiding other contraband. While there is some dispute as to what was said and done, Robinson asserts Officer Hawkins grabbed her by the arms and pushed her face-first into the trailer yelling, "Bitch, this isn't all that you have. You're not freaking out over a bag of marijuana."

Officer Hawkins turned Robinson around and pushed her back against the trailer. Pictures of Robinson's clothes from that evening show some staining, reportedly caused by the encounter. Robinson claims Officer Hawkins then unfastened her pants, pulled down her underwear, and "touched . . . Robinson's vagina, anus, and inside her vagina lips." Robinson claims that shortly thereafter, Officer Hawkins planted a baggie containing drugs on the ground in front of Robinson.[2]

---

[2]Though the district court's order and the briefing both mention the alleged drugs in passing (as "dope"), neither comments on their significance. It is unclear whether any drugs were in fact recovered. Taking the facts in the light most favorable to Robinson, Robinson had no drugs, and Officer Hawkins knew she had no drugs.

Robinson also claims she "could still see the man [i.e., the male officer] that was watching" during the search. Security footage confirmed the presence of a male officer in the lot during at least a portion of the search. Officer Hawkins did not dispute Robinson's assertion "that there were at least two male officers in the parking lot while [Officer Hawkins] searched [Robinson]." Robinson described the experience as feeling "like [she] was being raped in public."

Officer Hawkins walked Robinson back to the patrol car and shortly thereafter Officer Swinton arrived at the scene of the stop. Officer Swinton observed that Robinson was "hysterical." According to Officer Swinton it appeared that Robinson was "having a panic attack."

Robinson was transported to the police station, where she attempted to write a statement describing Officer Hawkins's behavior. While Robinson was writing her statement, Officer Swinton allegedly attempted to pressure her into claiming the "dope" belonged to her boyfriend. Robinson asked for a lawyer and Officer Swinton cursed at her in reply. Robinson claims Officer Swinton then read her statement, laughed, balled it up, and did not include the statement in the final incident report. At her deposition, Officer Swinton explained she did not include the statement in Robinson's incident report because it was unsigned. There is, however, no SLMPD policy requiring statements to be signed. Officer Swinton also described Officer Hawkins as a "mentor."

The day after her encounter with police, Robinson visited an emergency room and was treated for shoulder pain, neck pain, and cuts and bruising on her wrists, all of which she attributed to her encounter with the officers. Following treatment, she was prescribed an anti-inflammatory drug, a pain-killer, and a muscle relaxant.

Officer Swinton later drafted her own incident report for the evening, even though she had not been at the scene during most of the relevant events. The officers concede that Officer Swinton's report is riddled with inaccuracies and omissions. For

-4-

example, the report did not mention the presence of Officers Spiess and McMurry, the pat-down search in the street, Robinson's request to be searched at the station, Officer Hawkins's request for gloves, the strip-search in the parking lot, the unfastening and lowering of Robinson's pants, or Robinson's distress.

No charges were brought against Robinson. Robinson subsequently sued Officers Hawkins and Swinton in both their individual and official capacities under 42 U.S.C. § 1983 for violating her constitutional rights. Robinson alleged Officers Swinton and Hawkins conspired to produce a false police report. She also alleged Officer Hawkins used excessive force and performed an unreasonable search, in violation of the Fourth Amendment. Officers Hawkins and Swinton moved for summary judgment on the basis of qualified immunity.

The district court construed Robinson's complaint as alleging that Officers Swinton and Hawkins had conspired to deny her access to the courts. The district court then granted summary judgment to the officers on the official capacity claims but denied summary judgment on the individual capacity claims. The court determined a reasonable jury could conclude that Officer Hawkins had used excessive force and performed an unreasonable search and that Officers Hawkins and Swinton had conspired to deny Robinson access to the courts.

On appeal, Officers Hawkins and Swinton argue Robinson's complaint does not allege that they conspired to violate her constitutional rights, and they deny the existence of a constitutional right to an accurate police report. Officer Hawkins also denies having used excessive force or performed an unreasonable search.

## II. Discussion

### A. Conspiracy

Count VI of Robinson's complaint alleges that the officers "unlawfully conspired with each other to violate [her] constitutional rights" and that she "was deprived of her rights guaranteed in the United States Constitution." The district court construed the conspiracy count as a conspiracy by the officers to deprive Robinson of her right access to the courts. While we have recognized that this type of construction may be appropriate, *see S.L. ex rel. Lenderman v. St. Louis Metro. Police Dep't Bd. of Police Comm'rs*, 725 F.3d 843, 848–49 (8th Cir. 2013) (cleaned up) (construing plaintiff's claim that defendants "had violated her Fourteenth Amendment rights to due process, property, equal protection under the law, and equal justice by conspiring together . . . to undertake a course of conduct that violated [plaintiff's] civil rights" as alleging deprivation of access to the courts), we believe that such a construction is unavailing to save Robinson's conspiracy claim in this case.

In order to prove a conspiracy under § 1983, the plaintiff must show for a particular defendant: (1) a conspiracy between the defendant and at least one other person; (2) an overt act in furtherance of the conspiracy; (3) a resulting injury to the plaintiff; and (4) the deprivation of a constitutional right or privilege. *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999) (internal citations omitted). Even though the question of a conspiracy to deprive a person of their constitutional rights is usually a jury question, a court may resolve a conspiracy claim on summary judgment where it is "convinced that the evidence presented is insufficient to support any reasonable inference of a conspiracy." *White v. McKinley*, 519 F.3d 806, 816 (8th Cir. 2008) (internal quotations omitted).

This is such a case. Robinson has scant evidence from which a reasonable jury could infer that Officers Hawkins and Swinton conspired to deprive Robinson of her constitutional rights. The evidence Robinson points to included: Officer Swinton

called Officer Hawkins "a mentor"; that Swinton's report included multiple material inaccuracies; that it was unusual for a person who had not witnessed either the stop or the search to prepare a report; and that Swinton was rude and disrespectful while Robinson drafted her statement. Taking Robinson's claims about Officer Swinton's treatment as true, we agree that Officer Swinton acted unprofessionally in yelling and cursing at Robinson while she drafted her statement. The multiple inaccuracies in Officer Swinton's report are concerning. These shortcomings reflect poorly on Officer Swinton's credibility. Nonetheless, they do not establish the existence of an agreement between Officers Hawkins and Swinton. That Officers Hawkins and Swinton enjoyed a close professional relationship is insufficient, standing alone, to support a reasonable inference of a conspiracy.

We find the district court erred in denying Officers Hawkins and Swinton summary judgment on the conspiracy claim.

B.     Fourth Amendment Claims

"We review *de novo* a district court's denial of summary judgment on the basis of qualified immunity." *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009).

> Ordinarily, we lack jurisdiction to hear an immediate appeal from a district court's order denying summary judgment, because such an order is not a final decision. We do, however, have limited authority to review the denial of qualified immunity through an interlocutory appeal under the collateral order doctrine. Jurisdiction over an interlocutory appeal from the denial of qualified immunity extends only to abstract issues of law, not to determinations that the evidence is sufficient to permit a particular finding of fact after trial.

*Shannon v. Koehler*, 616 F.3d 855, 860–61 (8th Cir. 2010) (cleaned up). "Qualified immunity shields a government official from liability and the burdens of litigation in

a § 1983 action for damages unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable official would have known." *Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When a defendant asserts qualified immunity at the summary judgment stage, the plaintiff must produce evidence sufficient to create a genuine issue of fact regarding whether the defendant violated clearly established law." *Id.* (citing *Johnson v. Fankell*, 520 U.S. 911, 915 (1997)).

"The obvious function of the qualified immunity rule is to excuse an officer who makes a reasonable mistake in the exercise of his official duties." *Edwards v. Baer*, 863 F.2d 606, 607 (8th Cir. 1988). Therefore, the "clearly established" analysis "focus[es] . . . on whether the officer had fair notice that her conduct was unlawful . . . at the time of the conduct." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam). Though "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . [t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Koehler*, 616 F.3d at 864 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

### 1.    Excessive Force

"The right to be free from excessive force in the context of an arrest is clearly established under the Fourth Amendment." *McCrystal*, 708 F.3d at 1005. However, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989)) (citation omitted). "Police officers undoubtedly have a right to use some degree of physical force, or threat thereof, to effect a lawful seizure, and reasonable applications of force may well cause pain or minor injuries with some frequency." *Chambers*, 641 F.3d at 907 (citation omitted). "A de minimis use of force is insufficient to support a claim, and it may well be that most plaintiffs showing only de minimis injury can show only a corresponding de minimis use of force." *Id.* at 906.

We conclude that Officer Hawkins is entitled to qualified immunity because it is not clearly established that the amount of force Hawkins used against Robinson is excessive. While we have previously stated that "the use of force against a suspect who was not threatening and not resisting may be unlawful," *Shannon v. Koehler*, 616 F.3d 855, 864 (8th Cir. 2010), that general proposition does not answer whether a particular use of force is *de minimis* (and therefore insufficient to support a claim). In *Crumley v. City of St. Paul*, we held that a police officer did not violate a suspect's clearly established rights when he "struck or pushed [the suspect] approximately five times and then spun her around and handcuffed her," and where the suspect suffered bleeding wrists as a result of being handcuffed. 324 F.3d 1003, 1006–08 (8th Cir. 2003) ("[W]e conclude no reasonable jury could have found the police officer used excessive force by pushing or shoving Crumley to effect the arrest.).[3] The amount of force used in *Crumley* was comparable to that alleged here, where Robinson was shoved up against a trailer and handcuffed. The injuries Robinson sustained as a result of the force were fairly minor, including some pain and bleeding from the wrists as a result of being handcuffed and pain in her shoulders from being pushed against the trailer. While a *de minimis* injury does not preclude a claim of excessive force, the nature of any injuries suffered may still inform our understanding of the force used. *Chambers*, 641 F.3d at 906; *see also id.* at 907 (citation omitted) ("Handcuffing inevitably involves some use of force, and it almost inevitably will result in some irritation, minor injury, or discomfort where the handcuffs are applied."). Given the

---

[3]*Crumley* was decided at a time when we had not yet determined whether alleging more than *de minimis* injury was required to support an excessive force claim. Our reasoning in *Crumley* shifted between holding that the absence of an injury "suggest[ed]" that "*the force* used here was reasonable," and that the injuries themselves were "too minor to support an excessive force claim." *Id.* at 1008 (emphasis added). While we eventually held in *Chambers* that it was possible for the use of excessive force to result in only a *de minimis* injury, we explained that the "degree of injury" was still "certainly relevant insofar as it tends to show the amount and type of force used." 641 F.3d at 906. Accordingly, much of the reasoning in *Crumley* is not clearly overridden by our decision in *Chambers*.

general rule that "[n]ot every push or shove . . . violates the Fourth Amendment" and in the absence of a case clearly holding that shoving a suspect against a vehicle and tightening their handcuffs in circumstances like this amounts to more than *de minimis* force, we conclude that Officer Hawkins's use of force did not violate a "clearly established" right.

### 2. *Unreasonable Search*

#### a. *Violation of a Constitutional Right*

The Fourth Amendment protects against unreasonable searches and seizures. Strip searches raise special considerations, as "the need for the *particular* search [must be balanced] against the invasion of personal rights that the search entails." *Franklin v. Lockhart*, 769 F.2d 509, 510–11 (8th Cir. 1985) (alteration in original) (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). Such a search must be "reasonable in its scope, manner, and location." *United States v. Williams*, 477 F.3d 974, 975 (8th Cir. 2007). In regards to scope and manner, "evidence [of] . . . touch[ing,] . . . prodd[ing,] . . . or [the use of] physical force . . . . are important considerations in weighing the level of insult to personal privacy visited upon the victim of a search." *United States v. Oyekan*, 786 F.2d 832, 838 (8th Cir. 1986) (internal quotation omitted). Accordingly, searches involving "penetration or public exposure of genitals" are considered more intrusive than those not involving such means. *Williams*, 477 F.3d at 976.

In *Williams*, officers transported a suspect to a police station parking lot after a pat-down search revealed the presence of potential contraband. *Id.* at 975. An officer then searched the suspect in the lot—opening his pants, reaching inside his underwear with a gloved hand, and retrieving a large amount of drugs from near his genitals. *Id.* The lot was enclosed by a brick building and a chain-link fence topped with barbed wire. *Id.* We held that the officers had not acted unreasonably in searching the suspect outdoors, declining "to adopt a bright-line rule that when a detainee has been secured, and travel to a station-house is possible, an on-street

-10-

intimate inspection is an unconstitutional, unreasonable search." *Id.* at 977 (cleaned up). We found that the lot, though outdoors, was "partially secluded" and that the suspect's genitals "remained obscured from the view of passers-by." *Id.* We also distinguished the search as less intrusive than those "involv[ing] . . . penetration or public exposure of genitals." *Id.* at 976.

The district court found that "a reasonable jury could find that the strip search was justified" by Robinson's admission that she was carrying marijuana. However, the district court also found that

> [t]here are genuine issues of fact . . . regarding whether and at what distance a male officer watched the search; whether Defendant Hawkins used abusive language and excessive force during the search; and whether Plaintiff's pants and/or underpants were lowered further than necessary for Plaintiff to retrieve the marijuana hidden inside.

Upon review, we agree with the district court that issues of material fact remain as to whether Officer Hawkins's search was indeed reasonable.

Taking the facts in the light most favorable to Robinson, a reasonable jury could conclude that the search was unreasonable in both scope and manner. Robinson alleges that Officer Hawkins pulled down her underwear while she was pushed against an oily tractor-trailer in an open-air parking lot, touched the inside and outside of her vagina and her anus as a male officer watched, and yelled insults and expletives at her during the search. Furthermore, Officer Hawkins's own testimony reasonably supported the presence of contraband under Robinson's garments (rather than inside her genitals), and she had *already* retrieved the marijuana from Robinson's underwear when she proceeded to push Robinson against the trailer and expose and probe Robinson's genitals.

We cannot say that Officer Hawkins's search was reasonable as a matter of law, and we conclude that questions of material fact exist as to whether Officer Hawkins violated Robinson's constitutional rights.

### b. *Clearly Established Right*

We have long prohibited officers from unduly invading personal rights during a strip search. *See Franklin*, 769 F.2d at 510–11. Specifically, clearly established law holds that strip searches are to be conducted by an officer of the same sex as the suspect "in an area as removed from public view as possible without compromising legitimate security concerns" and to "be performed in a hygienic fashion and not in a degrading, humiliating or abusive fashion." *Richmond v. City of Brooklyn Ctr.*, 490 F.3d 1002, 1008 (8th Cir. 2007).

In *Richmond*, male officers strip searched a male suspect in his motel room. *Id.* at 1005. While the suspect was bent over, an officer noticed a tissue protruding from the suspect's anus and removed it with a gloved hand. *Id.* Though we did not consider the reasonableness of the strip search itself, we held the search had not violated clearly established law because the suspect had been searched in the privacy of his hotel room by male officers and there was no "evidence of insulting, intimidating or humiliating comments or jokes by the officers." *Id.* at 1009.

In contrast, Robinson claims a male officer was watching while Officer Hawkins conducted the strip search, and Officer Hawkins acknowledges that "a male should not be present for a female search." Robinson claims the search was "conducted in [an] unsanitary parking lot," and Officer Hawkins has also

acknowledged that the parking lot was not sanitary.[4]  Finally, Robinson claims Officer Hawkins cursed and yelled at her.

The other officer at the scene was not of the same sex as Robinson.  An oily tractor-trailer in an open-air parking lot is not hygienic.  And Robinson's claim that Officer Hawkins called her a "bitch" and a "f*cking dope fiend," is "evidence of insulting, intimidating or humiliating comments or jokes."  *See Richmond*, 490 F.3d at 1009.

As of October 19, 2012, the law spoke directly and clearly to the issues raised with respect to Officer Hawkins's search.  Therefore, we conclude that the law was sufficiently clear to inform Officer Hawkins her search of Robinson was unlawful both in scope and manner.

The district court did not err in denying Officer Hawkins qualified immunity on Robinson's unreasonable search claim.

---

[4]Though Officer Hawkins admitted in her deposition that the parking lot was not sanitary, she argues on appeal that the "fact [that the area was unsanitary] has no consequence if none of [Robinson's] private areas were touching them."  Relatedly, she also argues that because the *Richmond* suspect's hotel room was likely dirtier than the parking lot, she did not have fair notice of "hygienic's" meaning.  However, the cleanliness of the search's setting matters.  *See, e.g., Rodriques v. Furtado*, 950 F.2d 805, 810, 811 (1st Cir. 1991) (emphasizing the cleanliness of the "atmosphere" and "setting" of the area where an intimate search is conducted).  A suspect's own hotel room and a public, open-air parking lot occupied by foreign objects—including oily machinery—are readily distinguishable.

## III.  Conclusion

The judgment of the district court is reversed as to the conspiracy and excessive force claims and affirmed as to the unreasonable search claim.  We remand for further proceedings consistent with this opinion.

SMITH, Chief Judge, concurring in part and dissenting in part.

I concur in Part II.A of the panel opinion, and in Part II.B.2, which affirms the district court's denial of qualified immunity as to Robinson's unreasonable search claim. I write separately to express why I would also affirm the district court's denial of qualified immunity on Robinson's excessive force claim based on Robinson's allegation that Officer Hawkins twice slammed her against the trailer while performing the strip search.[5]

In her complaint, Robinson alleges that Officer Hawkins performed an unreasonable search (Count I), as she "had no legal cause to justify her strip search and body cavity search of [Robinson]." Am. Compl. at ¶ 80, *Robinson v. City of St. Louis*, No. 4:17-cv-00156 (E.D. Mo. Feb. 2, 2017), ECF No. 18. Additionally, Robinson alleges that Officer Hawkins used excessive force (Count II) by "forc[ing] [Robinson] to bend over . . . in public and in front of a male police officer, pull[ing] [Robinson's] pants down, and put[ting] her fingers inside [Robinson's] vagina"; "slamm[ing] [Robinson] into a parked tractor trailer while [Robinson] was in handcuffs"; and "tighten[ing] [Robinson's] handcuffs to an extent that [Robinson's] skin was cut." *Id.* at ¶ 87. The district court rejected Robinson's assertion that the search was unjustified. The court concluded that "a reasonable jury could find that the

---

[5]However, to the extent Robinson claims Officer Hawkins used force independent of the search—i.e., in dragging her into the lot or handcuffing her—I concur in the court's analysis as outlined in Part II.B.1 of this opinion.

strip search was justified" by Robinson's admission that she was carrying marijuana. *Robinson*, 2018 WL 1695534, at *7. The district court denied qualified immunity as to Count I relying mainly on the facts Robinson alleged under Count II, explaining that

> [t]here are genuine issues of fact . . . regarding whether and at what distance a male officer watched the search; whether Defendant Hawkins used abusive language *and excessive force during the search*; and whether Plaintiff's pants and/or underpants were lowered further than necessary for Plaintiff to retrieve the marijuana hidden inside.

*Id.* (emphasis added).

The search conducted in this case was unreasonable in part due to the force used in conducting it. Strip searches can certainly be lawful. However, "[a] strip search conducted in a professional manner is more reasonable than one that is not," *Harris v. Miller*, 818 F.3d 49, 59–60 (2d Cir. 2016) (per curiam), and such searches must be reasonable in "scope, manner, and location." *Williams*, 477 F.3d at 975. Specifically, in regards to scope and manner, "evidence [of] . . . touch[ing,] . . . prodd[ing,] . . . *or [the use of] physical force . . . .*[is an] important consideration[] in weighing the level of insult to personal privacy visited upon the victim of a search." *Oyekan*, 786 F.2d at 838 (emphasis added) (internal quotation omitted). The Eleventh Circuit has included use of force in its review of the reasonableness of strip searches. *See United States v. Vega-Barvo*, 729 F.2d 1341, 1346 (11th Cir. 1984) ("[W]e have isolated three factors which contribute to the personal indignity endured by the person searched: (1) physical contact between the searcher and the person searched; (2) exposure of intimate body parts; and (3) *use of force*." (emphasis added)). And, "[u]nnecessary force" may contribute to a search's unreasonableness. *See Evans v. Stephens*, 407 F.3d 1272, 1281 (11th Cir. 2005) (en banc). I agree with the district court's conclusion that Officer Hawkins's use of force during the search creates an issue of material fact as to the search's overall reasonableness.

I also agree with the district court's conclusion that Officer Hawkins used excessive force. The majority holds that "it is not clearly established that the amount of force [Officer] Hawkins used against Robinson is excessive." I dissent from that portion of the panel opinion. Existing precedent put Officer Hawkins on notice that her use of force in the context of a strip search was unlawful.

"[F]orce is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." *Brown*, 574 F.3d at 499. And, "[l]ong before [October 19, 2012], this court (among others) had announced that the use of force against a suspect who was not threatening and not resisting may be unlawful." *Koehler*, 616 F.3d at 864. Specifically, "[i]t was [also] clearly established [by October 19, 2012] that when a person is subdued and restrained with handcuffs, a gratuitous and completely unnecessary act of violence is unreasonable and violates the Fourth Amendment." *Blazek v. City of Iowa City*, 761 F.3d 920, 925 (8th Cir. 2014) (internal quotation omitted) (finding plaintiff had a clearly established right not to be "jerked" onto his bed where plaintiff was "handcuffed and under control," not resisting or posing a threat to the officers, and not suspected of a serious crime).

The court concludes that *Crumley* precludes finding that Officer Hawkins violated Robinson's clearly established rights. However, *Blazek*, rather than *Crumley*, is the better precedent for the instant facts. In *Blazek,* the officer was on notice that "jerk[ing]" the handcuffed and compliant plaintiff constituted "a gratuitous and completely unnecessary act of violence," in violation of the Fourth Amendment. 761 F.3d at 925 (internal quotation omitted). *Blazek* put Officer Hawkins on notice that pushing a handcuffed and compliant Robinson against a trailer was unlawful. Robinson's relatively minor injuries do not distinguish this case from *Blazek. See id.* at 926 (describing plaintiff's injuries as "significant"). In *Chambers*, we explained that while a plaintiff's injuries may be relevant in determining whether the force used was excessive, "there is no uniform requirement that a plaintiff show more than *de minimis* injury to establish an application of excessive force." 641 F.3d at 907. Though a

suspect's degree of injury may be relevant to assessing the degree of force used, the force itself, and the reasonableness of that force in light of the circumstances, is the critical inquiry. *Id.* It is the degree of force in light of the circumstances, not the degree of injury, that determines lawfulness or unlawfulness of a particular use of force. *See id.* Significantly, *Crumley* involved a plaintiff who resisted the arresting officer. 324 F.3d at 1008. Here, by contrast, it is undisputed that Robinson did not resist Officer Hawkins at any point during their encounter and that she was *already* handcuffed when Officer Hawkins twice shoved her against the trailer.

On this record, I also would not characterize Officer Hawkins's forceful pushing of Robinson against the trailer as a *de minimis* use of force. We have characterized *de minimis* uses of force as those incidental contacts between officers and suspects during the course of a seizure or arrest, since "[t]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Cavataio v. City of Bella Villa*, 570 F.3d 1015, 1019 (8th Cir. 2009) (quoting *Graham*, 490 U.S. at 396). The force inquiry cannot be completely divorced from its "context," i.e., "whether the force used to effect a particular seizure is reasonable." *Waters v. Madson*, 921 F.3d 725, 740 (8th Cir. 2019) (internal quotations omitted).

The *de minimis* force and reasonableness inquiries are not necessarily antagonistic. *See Chambers*, 641 F.3d at 907 ("The dispositive question is whether the officer's conduct was objectively reasonable under the circumstances, as judged from the perspective of a reasonable officer on the scene at the time the force was applied."); *LaCross v. City of Duluth*, 713 F.3d 1155, 1159 (8th Cir. 2013) ("[A]n officer is not entitled to qualified immunity if his use of force is *excessive in the circumstances*, even if the injury inflicted was minor." (emphasis added)). That is because "force unjustified by any legitimate need would be unlawful." *Hemphill v. Hale*, No. 4:09-cv-2123, 2011 WL 4014371, at *4 (E.D. Mo. Sept. 9, 2011), *aff'd*, 677

F.3d 799 (8th Cir. 2012) (per curiam).[6] Qualified immunity appropriately protects officers from suit and liability for inadvertent harm caused by negligent acts as they enforce the law. Those putting their lives on the line for the safety of the public deserve no less. But it provides no litigation shield for unnecessary, intentional acts violative of clearly established rights.

Robinson's allegation that Officer Hawkins used excessive force in slamming her against the trailer to effect a search is distinct from her claim that Officer Hawkins used excessive force in applying her handcuffs or otherwise effecting her seizure. Officer Hawkins's tightening of Robinson's handcuffs may be characterized as *de minimis*. But, her alleged slamming of Robinson against the trailer should not be. Robinson had already submitted when Officer Hawkins allegedly shoved her against the trailer. The shoving did not further Officer Hawkins's legitimate purpose of arresting Robinson or effecting a lawful search.

I would permit the excessive force claim to proceed as well as the unreasonable search claim.

COLLOTON, Circuit Judge, concurring in part and dissenting in part.

Officer Hawkins unquestionably had probable cause to search appellee Robinson's person for contraband at the time of her arrest. Indeed, Robinson admitted before the search that she had concealed drugs inside the front of her waistband before the arrest. Yet without identifying any decision of the Supreme Court or this court

---

[6]*See also Feemster v. Dehntjer*, 661 F.2d 87, 89 (8th Cir. 1981) (deeming "any force" unlawful where the person in custody has already "quietly submit[ted]"). That a particular use of force may be deemed *de minimis* in some contexts does not legitimize an otherwise illegitimate use of force. *Cf. Hemphill*, 677 F.3d at 801 (explaining that while "officers undoubtedly have a right to use some degree of physical force . . . to effect a lawful seizure," they "do not have the right to use any degree of physical force" to coerce consent to a search (internal quotation omitted)).

holding unreasonable the *scope and manner* of a search of a suspect's person for contraband, the court holds that Hawkins violated a clearly established right of Robinson's under the Fourth Amendment. Proper application of the doctrine of qualified immunity calls for a contrary conclusion, so I would reverse the district court's order on Robinson's unreasonable search claim.

During the disputed search, Hawkins wore sanitary rubber gloves on her hands. The search took place in a parking lot behind a tractor-trailer and out of public view. The only third party who witnessed the search was a male police officer at an alleged distance of twenty feet. R. Doc. 55-1, at 45. Robinson asserts that Hawkins called her "Bitch" and a "f***ing dope fiend" before the search. *Id.* at 39. During the search for contraband, Hawkins allegedly pulled down Robinson's pants and touched her vagina, inside her vaginal lips, and the area below her anus. R. Doc. 68-2, at 22. Robinson also asserts that Hawkins used unreasonable force in conducting the search, but this court properly concludes that allegedly shoving Robinson against the tractor-trailer did not violate a clearly established right.

The first significant problem with the court's qualified-immunity analysis is that it relies on *dicta* rather than holdings of the Supreme Court or this court. Clearly established law must be derived from holdings, not from *dicta*. *See Morrow v. Meachum*, 917 F.3d 870, 875-76 (5th Cir. 2019) (collecting authorities). To support its ruling that Hawkins's conduct violated a clearly established right, the court relies almost entirely on a decision of this court holding that a search *did not* violate clearly established rights. *See Richmond v. City of Brooklyn Center*, 490 F.3d 1002, 1008 (8th Cir. 2007). The court cites *dicta* from *Richmond* as the source of "clearly established law." Yet *Richmond* could not place the Fourth Amendment issue beyond debate, because the decision did not even hold that the search in that case was unconstitutional. *Id.* at 1007 & n.4.

The second major difficulty is that the *dicta* from *Richmond*—even assuming that they could clearly establish a constitutional right—do not address the particular

-19-

circumstances of this case. In considering a defense of qualified immunity, the law must not be examined at a high level of generality: "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (internal quotation omitted). "[S]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (first alteration in original) (internal quotation omitted).

The discussion from *Richmond* does not address facts comparable to those presented here. The decision could not place the constitutionality of Hawkins's search "beyond debate," such that only a "plainly incompetent" officer or a knowing lawbreaker could have conducted the search. *See id.* (internal quotation omitted). The court's other principal authority, *United States v. Williams*, 477 F.3d 974 (8th Cir. 2007), highlights the fact-intensive nature of the reasonableness inquiry in this context. *Williams* expressly declined "to adopt a bright-line rule that when a detainee ha[s] been secured, and travel to a station-house [is] possible, an on-street intimate inspection [is] an unconstitutional, unreasonable search." *Id.* at 977 (alterations in original) (internal quotation omitted).

The court first cites a statement from *Richmond* that "strip searches should be conducted in an area as removed from public view as possible without compromising legitimate security concerns." 490 F.3d at 1008. The principal authority cited in *Richmond*, however, was a decision holding that a visual body cavity search of inmates conducted within view of four to five other inmates was *reasonable*. *See Franklin v. Lockhart*, 883 F.2d 654, 655-57 (8th Cir. 1989). The only cited authority that found a constitutional violation was far afield from the facts of this case: the Tenth Circuit held unreasonable a strip search of an arrestee conducted in a police station's public lobby area where "ten to twelve people were milling about." *Hill v. Bogans*, 735 F.2d 391, 393-94 (10th Cir. 1984). Here, the district court correctly

deemed it undisputed that Hawkins conducted the search in an area "that shielded [Robinson] from public view." R. Doc. 84, at 14.

The only witness to Hawkins's search of Robinson was a male police officer. Under Robinson's version of the facts, he was present at a distance of twenty feet. The relevant precedents gave no fair warning that this court would hold the manner of searching unconstitutional based on the male officer's observations. In *Timm v. Gunter*, 917 F.2d 1093 (8th Cir. 1990), this court held that it was *reasonable* for female guards to conduct intermittent visual surveillance of male inmates for security purposes while they used showers and bathrooms or slept without clothing. *Id.* at 1102. We held in *Story v. Foote*, 782 F.3d 968 (8th Cir. 2015), that officials did not violate a clearly established right under the Fourth Amendment by conducting a body-cavity inspection of a male subject while a female officer could view the search through a video feed on a security camera. *Id.* at 971-72. The law thus did not place Hawkins on clear notice that it was unreasonable for a male officer to observe her search of Robinson from a distance in case Hawkins needed assistance. *Accord Burton v. Spokane Police Dep't*, 383 F. App'x 671, 673 (9th Cir. 2010).

The court next cites *dictum* from *Richmond* that a "strip search" should be conducted in a "hygienic fashion." 490 F.3d at 1008. Based on this phrase, the court concludes that Hawkins violated a clearly established right by conducting the search of Robinson in an "unsanitary parking lot" after pushing her against an "oily tractor-trailer" and then pulling her off. *See* R. Doc. 55-1, at 48. In explaining its reference to hygiene, however, *Richmond* cited only a decision holding that officers acted unreasonably when they wore a *single* pair of gloves to conduct body-cavity searches of *multiple* inmates. *Bonitz v. Fair*, 804 F.2d 164, 172-73 (1st Cir. 1986). Hawkins did nothing of the sort; she requested a fresh set of sanitary gloves to search Robinson's private areas. There is no evidence that anything unsanitary from the parking lot entered Robinson's body. *Richmond*'s *dictum* declaring it unreasonable to employ a soiled glove to search a suspect's body cavities did not give fair warning

that a search conducted with a sanitary glove would be declared unreasonable based on the condition of the surrounding area.

The court also invokes *Richmond*'s *dictum* that a "strip search" should not be conducted in a "degrading, humiliating or abusive fashion." 490 F.3d at 1008. To explain this statement, however, *Richmond* cited a decision holding it unreasonable to subject a prisoner to sexual comments about his anatomy and rub his buttocks with a night stick during strip searches. *See Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995). *Richmond* also adverted to the Supreme Court's statement in *Bell v. Wolfish*, 441 U.S. 520 (1979), that "on occasion a security guard may conduct the [body-cavity] search in an abusive fashion," and that "[s]uch an abuse cannot be condoned." *Id.* at 560. The *Wolfish* Court was referring to a district court's finding that "[t]here have been insultingly suggestive remarks and banal but terrifying expressions of aggressions like those of guards threatening in the time of nakedness to 'put [a] foot up [the] ass' or merely to 'kick the ass' of the humbled prisoner." *United States ex rel. Wolfish v. Levi*, 439 F. Supp. 114, 147 (S.D.N.Y. 1977).

By contrast, Hawkins's alleged name-calling and use of profanity was not sexually suggestive or particular to the intimate search. Hawkins did not misuse a baton or threaten physical abuse of Robinson's private areas. Hawkins did not have fair warning that she was forbidden to proceed with a search after allegedly uttering the quoted expletives. While the cited language may offend the sensibilities of a reviewing judge in chambers, the court cites no authority holding that use of foul language during the rough-and-tumble of street interaction between officer and suspect renders a subsequent search unreasonable.

Other points raised by the court do not bolster its conclusion. That Robinson had relinquished some marijuana from her underwear did not make it unreasonable for Hawkins to search for more. If anything, confirmation that Robinson hid some drugs under her garments bolstered probable cause to believe that she secreted other contraband inside her clothing or body. That Robinson preferred to be searched at a

-22-

police station is immaterial. There is no clearly established law that a suspect is entitled to choose the venue for a search supported by probable cause. The inflammatory statement that Robinson felt like she was "being raped in public" adds nothing to the analysis. As a factual matter, it is undisputed that she was shielded from public view. As a legal matter, the Fourth Amendment reasonableness standard is objective and does not turn the subjective feelings of the person searched.

Rulings declaring the violation of a "clearly established right" require careful attention, because "qualified immunity is important to 'society as a whole,' and because as 'an immunity from suit,' qualified immunity 'is effectively lost if a case is erroneously permitted to go to trial.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (internal quotation marks and citation omitted). For the reasons discussed, the district court's decision denying qualified immunity to Hawkins on Robinson's unreasonable search claim should be reversed. Any disputed facts are not material to the legal conclusion. I concur in Parts II.A and II.B.1 of the opinion of the court and would reverse the district court's order on all three points raised.

_____